**Jeannette CORUM et al., Plaintiffs,**

v.

**BETH ISRAEL MEDICAL CENTER et al., Defendants.**

**No. 72 Civ. 2654.**

United States District Court,
S. D. New York.

April 27, 1973.

Motion Denied June 1, 1973.

Louise Lander, MFY Legal Services, Inc., Robert P. Borsody, Community Health Law Project, New York City, for plaintiffs.

Lipkowitz, Plaut, Salberg & Harris, New York City, for defendants Beth Israel Medical Center, Trussell and Vorzimer; Irving D. Lipkowitz, K. Wendy Slote, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., New York City,. Peter A. Herbert, Asst. U. S. Atty., for Richardson.

## MEMORANDUM

LASKER, District Judge.

By this action under the Hill-Burton Act, Title VI of the Public Health Service Act, 42 U.S.C. § 291 et seq., two individual and two corporate plaintiffs seek a declaratory judgment and an injunction obligating Beth Israel Medical Center ("BIMC") to provide "a reasonable volume of services to persons unable to pay therefor" as required by § 291c(e)(2) of the Act and the regulation issued thereunder (42 C.F.R. § 53.-111). Defendants are BIMC, its general director and its director of ambulatory health services [hereinafter collectively referred to as the "Beth Israel defendants"] and Elliot Richardson in his then capacity as Secretary of the United States Department of Health, Education and Welfare ("HEW").

The Beth Israel defendants move to dismiss, or in the alternative for summary judgment, on the grounds that 1) The complaint does not allege *in haec verba* that BIMC does not provide a reasonable volume of uncompensated services as required by the Act; 2) no obligation arises under the statute until the facility or portion of the facility for which funds are being received is actually completed (the rehabilitation facility not having been completed at the time the motion was brought); 3) the complaint fails to state a claim against the directors in their individual capacities; 4) the corporate plaintiffs lack standing to sue; 5) the court does not have subject matter jurisdiction of the claim, since primary jurisdiction is vested in the state Hill-Burton agency and HEW; and 6) the amount of uncompensated services rendered by BIMC exceeds the presumptive compliance guideline established by the regulation. The Secretary also moves to dismiss on the grounds that the facility was not completed (as it was not at the time the motion was made) and so no obligation had vested and that the agencies have primary jurisdiction. Since these motions were argued, the rehabilitation medical center for which federal funds were expended has been completed, thus removing one ground for defendants' motions to dismiss.

Plaintiffs move to supplement the complaint with two new causes of action which have accrued since suit was filed. The first supplemental cause of action alleges that BIMC's limitation on the availability of outpatient care violates its obligations under New York's Ghetto Medicine Law, L.1968, ch. 967, and a contract between it and the New York City Commissioner of Health. Plaintiffs seek to add the Commissioner, Joseph Cimeno, as a defendant. The second supplemental cause of action challenges the validity of the regulation for two reasons: 1) The power of approval given the Federal Hospital Council is an

improper. delegation of power and 2) three of the regulation's provisions are inconsistent with the statute. The second supplemental complaint would add as defendants the twelve current members of the Federal Hospital Council. The Beth Israel defendants oppose both motions to .supplement; the Secretary does not oppose the second and takes no position on the first. Plaintiffs also seek a class action determination.

## I.

The Hill-Burton Act makes the following provision for hospital services for needy persons:

"The Surgeon General, with the approval of the Federal Hospital Council and the Secretary of Health, Education and Welfare, shall by general regulations prescribe—

   \*    \*    \*    \*    \*    \*

(e) that the State plan shall provide for adequate hospitals, and other facilities for which aid under this part is available, for all persons residing in the State, and adequate hospitals (and such other facilities) to furnish needed services for persons unable to pay therefor. Such regulations may also require that before approval of an application for a project is recommended by a State agency to the Surgeon General for approval under this part, assurance shall be received by the State from the applicant that . . . (2) *there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor,* but an exception shall be made if such a requirement is not feasible from a financial viewpoint." 42 U.S.C. § 291c (emphasis added).

On July 22, 1972,[1] HEW[2] issued an interim regulation implementing the statute's "reasonable volume" requirement, which was approved, without substantial modification, as a final regulation by the Federal Hospital Council on March 13, 1973. The regulation (42 C.F.R. § 53.111) sets a presumptive compliance guideline for uncompensated services to be provided each year of "not less than the lesser of 3 percent of operating costs or 10 percent of all Federal assistance provided to . . . the applicant under the Act." *Id.* at (d)(1). The regulation also establishes a procedure for fixing the level of uncompensated services required to satisfy a facility's obligations.

■ On April 2, 1969, HEW awarded BIMC a Hill-Burton grant of $400,000 to reconstruct and modernize its rehabilitation facility. .The new facility is completed and operating. There is no dispute that, under Federal law and by contract,[3] part of the *quid pro quo* for the grant is the requirement that BIMC

---

1. At the time this suit was filed, on June 22, 1972, the applicable regulation read as follows:

   "*Services for persons unable to pay.* Before an application under this part is recommended by a State agency to the Secretary for approval, the State agency shall obtain an assurance from the applicant that there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor. The requirement of an assurance from an applicant shall be waived if the applicant demonstrates to the satisfaction of the State agency, subject to subsequent approval by the Secretary, that such a requirement is not feasible from a financial viewpoint." 42 C.F.R. § 53.111, 37 Fed.Reg. 188 (Jan. 6, 1972).

2. The functions of the Surgeon General were transferred to the Secretary of HEW in 1966.

3. As required by federal law, BIMC's application for Hill-Burton funds included an assurance that "the facility . . . will furnish below cost or without charge a reasonable volume of services to persons unable to pay therefor." Exhibit A, Proposed Second Supplemental Complaint, item 10 P(1). Such an assurance creates a contractual relationship intended to benefit persons like the plaintiffs and those whom they seek to represent, who are unable to pay for BIMC's services. Euresti v. Stenner, 458 F.2d 1115, 1118–1119 (10th Cir. 1972); *see also* Cook v. Ochsner Foundation Hospital, 319 F.Supp. 603, 605–606 (E.D.La.1970).

afford poor persons a reasonable amount of free or below cost services.

Until July 1, 1971, BIMC accepted as patients in its outpatient clinics all persons who applied for treatment. The amounts charged for services rendered were established according to a sliding scale, ranging from one to sixteen dollars per visit, relative to ability to pay and eligibility for Medicare and Medicaid. This policy was discontinued as of that date, at which time BIMC began to accept as patients only those who pay forty-five dollars per visit or are eligible for Medicare or Medicaid. Plaintiffs contend that the new policy violates BIMC's statutory and contractual obligations. They claim further that the Secretary of HEW's failure to enforce BIMC's alleged obligations makes injunctive and declaratory relief appropriate as to him.

## II.

Before discussing defendants' motions to dismiss, we turn to plaintiffs' motion to supplement the complaint by a second federal cause of action attacking the validity of the regulation, since it bears on some of the issues raised by the motions to dismiss.

The second supplemental complaint alleges that the regulation (now final, but only interim at the time the motion was brought on) is defective because three of its provisions conflict with the Hill-Burton Act. Specifically, the claim is made that the Act does not permit a regulatory scheme which 1) sets a maximum presumptive compliance guideline limiting the amount of services which the state agencies can require; 2) establishes a twenty year limit on the length of a facility's commitment; and 3) permits a facility to postpone determination that an individual is unable to pay until after the rendition of bills. Furthermore, the second supplemental complaint attacks the regulation in its entirety because its adoption required the approval of the Federal Hospital Council which, plaintiffs allege, constitutes an improper delegation of legislative or executive power. At the time the motion to supplement was made, plaintiffs also sought to invalidate the interim regulation because of procedural deficiencies in the means by which it was adopted. These defects were not present in the adoption of the final regulation and that part of the proposed supplemental complaint is no longer operative.

The Secretary has withdrawn his opposition to this motion. The Beth Israel defendants take the position that we should dismiss as to them and allow the suit to proceed, if at all, against the Secretary and the defendants plaintiffs wish to add.

The suggestion of the Beth Israel defendants does not present a realistic approach to the situation. Contrary to their argument, the grounds on which they seek dismissal are not unaffected by the issues raised by the second supplemental complaint. In particular, a decision that the first cause of action should be dismissed to permit exhaustion of the administrative remedies created by the regulation would be pointless if plaintiffs were to prevail in having the regulation declared a nullity because of the manner in which it was adopted.

Furthermore, even if we were to agree with the Beth Israel defendants that the first cause of action should be dismissed, it does not follow that the case should then proceed without them. Although the second supplemental complaint does not state a new cause of action against them, nonetheless its ultimate aim, like that of the other causes of action, is to require them to provide additional outpatient services. They are, therefore, directly affected by the second federal cause of action and by its resolution. This is merely to say that the thrust of the complaint as a whole is against the Beth Israel defendants to require them to provide more services for the poor. It should not be broken into parts to be considered in isolation from each other, as urged by the Beth Israel defendants.

■ Accordingly, since the proposed supplementary pleading sets forth transactions and occurrences which have happened since the date of the original pleading, its filing should be allowed pursuant to Rule 15(d) (Fed.R.Civ.P.). No purpose would be served by obliging plaintiffs to commence a separate lawsuit and move to consolidate, whereas allowing supplementation will permit the entire controversy to be litigated as a unit on the merits. In a very similar case, supplementation was permitted (Johnson v. Stormont-Vail Hospital, Civ. No. T–5154 (D.Kan., Jan. 9, 1973)), and we are persuaded that it is the proper course here as well.

However, since the proposed second supplemental complaint was submitted by the plaintiffs before the Federal Hospital Council acted on the regulation, it has become inaccurate to the extent that it does not state the facts relevant to the regulation's finalization. A new supplemental complaint should therefore be submitted outlining this development and withdrawing the procedural attack on the adoption of the interim regulation.

### III.

We turn to the motions to dismiss. Since the funded facility has been completed, the sole ground relied on by the Secretary, which is also urged by the Beth Israel defendants, is that of primary jurisdiction. We shall discuss it last, after the other issues raised by the Beth Israel defendants.

■ As noted above, the latter urge dismissal because the complaint does not allege *in haec verba* the statutory formula that BIMC has not provided a reasonable volume of uncompensated services. While it is true the complaint does not expressly quote the statute, it nevertheless makes unmistakably clear plaintiffs' position, which is that BIMC's failure to provide below cost outpatient care constitutes the failure to provide a reasonable volume of uncompensated services which the statute prohibits. This is sufficient to state a cause of ac-

tion. As the Court said in Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Accord,* United States v. Hougham, 364 U.S. 310, 317, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960).

■ Second, the Beth Israel defendants argue that the corporate plaintiffs lack standing to sue. The two associations in question are neighborhood organizations whose members reside on the Lower East Side. The complaint states, as to Lower East Side Neighborhoods Association, Inc., that "[i]ts concerns include the adequacy of the educational, housing, and health facilities available to low income residents of the Lower East Side." Complaint, par. 10. The Lower East Side Coalition for Human Housing, Inc., according to the complaint, has among its committees "a Health Task Force, which has concerned itself with the availability of health services to low-income residents of the Lower East Side, and which has been an advocate group for health-services recipients." *Id.,* par. 11.

These factual allegations are meager, indeed, but we think they are sufficient to avoid dismissal. There is no question but that the individual plaintiffs and the class which they seek to represent are asserting an interest which is "within the zone of interest to be protected or regulated by the statute . . . in question." Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). They undoubtedly have standing to sue. Euresti v. Stenner, 458 F.2d 1115 (10th Cir. 1972); Organized Migrants in Community Action, Inc. v. James Archer Smith Hospital, 325 F.Supp. 268 (D.C.Fla.1971); Cook v. Ochsner Foundation Hospital, 319 F.Supp. 603 (E.D.La.1970). In fact, defendants do not assert the contrary. The organizational plaintiffs, whose

standing is attacked here, assert the interests of persons who are both their members and members of the injured class. This is enough to confer standing. In Sierra Club v. Morton, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972), the Court stated: "It is clear that an organization whose members are injured may represent those members in a proceeding for judicial review."

Finally, it is noteworthy that the regulation itself gives organizations such as these standing to participate in the agency proceedings. 42 C.F.R. § 53.-111(h)(5). In view of that fact and of the allegations in the complaint, we find that the organizational plaintiffs have standing to sue.

█ Ray Trussell, BIMC's General Director, and Jefferson Vorzimer, its Director of Ambulatory Health Services, move to dismiss on the ground that, since they have acted merely as representatives of the corporate defendant, the complaint does not state a cause of action as to them. The cases which they cite are inapposite, since they merely stand for the proposition that an agent who, with the knowledge of all parties, enters into a contract solely as the representative of a disclosed principal cannot be held liable *in damages* for the principal's breach of contract. Trussell and Vorzimer are being sued, not for damages, but for an injunction against future actions which they may take on behalf of the corporate defendant as persons in a position of control over it. Their motion to dismiss is, therefore, without merit.

Finally, the Beth Israel defendants and the Secretary move to dismiss on the ground that primary jurisdiction for enforcing the regulation is vested in the state Hill-Burton agency[4] and HEW. The Beth Israel defendants further move for summary judgment claiming that the amount of uncompensated services rendered by BIMC exceeds the presumptive compliance guideline established by the regulation. The grounds underlying these motions are substantial and may well warrant the relief requested. However, since they are predicated on the validity of the regulation, which plaintiffs challenge in their second supplemental complaint, it appears to us that the proper course is to defer consideration of these issues until a decision is reached on the merits of the second supplemental cause of action (which are not presently before us). We reach this conclusion on condition, however, that plaintiffs move for summary judgment on the supplemental federal claim within 20 days of the signing of an order carrying out this decision. If plaintiffs' attack on the regulation fails, or succeeds on a rationale which leaves intact the established agency procedures and the presumptive compliance guideline, defendants' motions would, of course, be renewable on the papers already submitted.

IV.

█ As discussed above, plaintiffs also seek to supplement their complaint with a cause of action predicated on New York's Ghetto Medicine Law. They allege a contract entered into pursuant to the statute by BIMC and the New York City Commissioner of Health, committing the former to provide comprehensive ambulatory care at charges adjusted according to the recipient's financial means in return for grants to the hospital of state and city funds. The Commissioner is proposed as a defendant, because of his alleged failure to enforce the agreement.

Clearly, no independent basis of federal jurisdiction underlies this cause of action. Jurisdiction, if it exists at all, is of a pendent nature and its exercise lies within the discretion of the court.

The contours of pendent jurisdiction were most fully delineated in United

---

4. The New York State Department of Health is designated as the sole agency for carrying out the purposes of the Act, pursuant to 42 U.S.C. § 291d(a)(1) and N.Y. Public Health Law § 2903, McKinney's Consol. Laws, c. 45.

Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which stated that jurisdiction exists "whenever there is a claim 'arising under [the] Constitution, [and] the Laws of the United States . . . ' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case'." *Id.* at 725, 86 S.Ct. at 1138. In short, "[t]he state and federal claims must derive from a common nucleus of operative fact." *Id.*

The opposite is true, here. Although both the original and first supplemental causes of action have as a common goal obliging BIMC to provide outpatient services to the indigent, they derive from entirely different factual contexts. The governing law, the contract to be enforced and the contracting party (other than BIMC) is different in each case. There is no intermingling of federal and state law or policy and no federal interest is implicated in the state claim.

■■■ It is therefore obvious that, if jurisdiction exists at all, it should not be exercised. As the Court stated in *United Mine Workers:*

> "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* at 726, 86 S.Ct. at 1139 (footnotes and citation omitted).

None of the interests described above would be promoted by accepting pendent jurisdiction of the state-based claim here, and therefore the motion to supplement the complaint by adding the state cause of action is denied.

V.

■■■ Plaintiffs have also moved for a class action determination. There appears to be no opposition to the motion. We find that the proposed class, consisting of all low-income residents of BIMC's service area who are ineligible for Medicare and Medicaid and financially unable to pay BIMC's forty-five dollar per visit charge for clinical services, meets the requirements of Rules 23(a) and (b)(2), and the motion is granted.

In sum, plaintiffs' first motion to supplement the complaint is denied; the second motion to supplement is granted. Defendants' motions to dismiss or for summary judgment are denied. Plaintiffs' motion for a class action determination is granted.

Submit order on notice.

## ON MOTION TO REARGUE

The Beth Israel defendants move to reargue our denial by memorandum dated April 27, 1973, of their motion to dismiss the complaint. They claim that the opinion did not deal with one ground for their motion, namely, that the complaint is legally insufficient because it alleges a failure to provide below cost outpatient care, whereas, defendants contend, the statute only requires them to provide care in that part of the facility for which funds are being received (the rehabilitation center) or in the emergency room. Plaintiffs and the Secretary of Health, Education and Welfare do not oppose granting the motion to reargue, but contend that in any event the complaint should not be dismissed (the Secretary urging dismissal only on the ground of primary jurisdiction).

It is true that the prior opinion does not explicitly discuss the point raised here by the Beth Israel defendants and, accordingly, the motion to reargue is granted. However, in accordance with the reasoning expressed in our discussion of primary jurisdiction, we adhere, on reargument, to our denial of the motion to dismiss.

At the outset, we reject defendants' contention that the statute on its face precludes plaintiffs' claim that a funded facility can be required to provide services in a portion other than that for which federal funds are specifically earmarked. To the contrary, we think that 42 U.S.C. § 291c(e)(2) permits a Hill-Burton agency to oblige a recipient of funds to provide services *either* in the "facility" *or* the "portion thereof" for which funding is received. On the other hand, we cannot accept plaintiffs' theory that funding of one portion of a facility *necessarily* mandates the provision of below-cost services throughout the facility.

Either absolutist approach would produce anomalous results which we cannot believe the statute intended. Adoption of defendants' more extreme position, that only the funded portion of the facility is required to provide services, would make it impossible to require any services of a facility whose nursing residence, for example, is ·constructed with federal funds. We are unwilling to reach such an undesirable conclusion without a clearer indication of Congressional intent. Furthermore, we see no justification in the statute for defendants' proposed solution to this dilemma, which is to allow a grantee either to provide only emergency care or to give it an entirely free hand in selecting the type of care it must furnish. The stated purpose of the Act is not merely to enable hospitals to provide emergency services, but "to furnish adequate hospital, clinic, or similar services" (42 U.S.C. § 291), which terms, we believe, encompass the whole range of hospital services. Moreover, the Act nowhere indicates an intention to delegate to the recipient of funds the power to determine what constitutes the reasonable volume of services which should flow from the grant, either in terms of amount or kind, and we reject the Beth Israel de-

fendants' invitation to interpret the Act in such fashion.

Plaintiffs' position, however, would also lead to incongruous results. It simply is not reasonable to conclude that the recipient of a small grant must provide services in all its clinics, regardless of how small a number of indigent patients each clinic would have to treat to satisfy the reasonable volume requirement. Such an allocation of resources would be absurd. Moreover this approach would require us to overlook entirely the phrase "or portion thereof",[1] which clearly indicates that the agencies need not require services to be provided in the entire facility.

Accordingly, we find that a recipient of Hill-Burton funds is required by the statute to provide such services in such portion or portions of its facility as will constitute a reasonable volume in light of the needs of the community and the amount of the grant. As discussed above, any other approach would handicap administrative efforts to tailor a recipient's Hill-Burton program so that, within the limitations imposed by the amount of the grant, it would provide the maximum amount of services of the kind most urgently needed by the community.

The "reasonable volume" concept involved here is typical of the kind of determination which would normally be left in the first instance to the agencies charged with administering the Act. In our earlier opinion, we denied defendants' motions to dismiss on the ground of primary jurisdiction to give plaintiffs an opportunity to challenge the validity of the regulation, the motions to be renewable if that attack should fail. Although determining what is meant by the statutory language "reasonable volume" (as opposed to what is required by the regulation) presents a primary jurisdiction problem which would survive invalidation of the regu-

---

1. 42 U.S.C. § 291c(e)(2) states:
   "there will be made available in the facility or portion thereof to be construct-ed or modernized a reasonable volume of services to persons unable to pay therefor . . . ."

**918**

lation (Perry v. The Greater Southeast Community Hospital Foundation, Civ. No. 725–71 (D.D.C., June 28, 1972)), dismissal on that ground, prior to a decision on the regulation's validity, would be inappropriate at this time. A decision by us on the validity of the regulation which establishes guidelines and administrative procedures for determining compliance with the statute will clarify both the substance of the statutory requirements and the administrative procedures available to resolve questions of compliance on a case by case basis. Under the circumstances, orderly administration of this complex case requires deferring all questions of primary jurisdiction for the short period necessary to crystallize the challenge to the regulation.

Accordingly, the motion to reargue is granted and the motion to dismiss is again denied.