Jeannette **CORUM** et al., Plaintiffs,

v.

**BETH ISRAEL MEDICAL CENTER** et al., Defendants.

No. 72 Civ. 2654.

United States District Court,
S. D. New York.

Jan. 29, 1974.

On Motion to Amend March 28, 1974.

Louise Lander, Carolyn M. Heft, MFY Legal Services, Inc., Robert P. Borsody, Community Health Law Project, New York City, for plaintiffs.

Lipkowitz, Plaut, Salberg & Harris, New York City, for defendants Beth Israel Medical Center, Ray E. Trussell, M.D., Jefferson J. Vorzimer, M.D.; Irving D. Lipkowitz, K. Wendy Slote, New York City, of counsel.

Paul J. Curran, U. S. Atty. S. D. N. Y., New York City, for Caspar W. Weinberger as Secretary of Health, Education and Welfare and the Federal Hospital Council; Naomi L. Reice, Asst. U. S. Atty., of counsel.

LASKER, District Judge.

A brief description of the prior proceedings in this case provides a necessary background to the present motions. The action was brought under the Hill-Burton Act, 42 U.S.C. § 291 et seq., to compel Beth Israel Medical Center ("BIMC") to provide "a reasonable volume of services to persons unable to pay," *id.* at § 291c(e)(2). The Court granted plaintiffs leave to amend their complaint to attack the validity of the regulation issued under the statute (42 CFR § 53.111) and denied defendants' motions to dismiss. 359 F.Supp. 909 (S.D.N.Y.1973). In declining to dismiss, the court stated, however, that two of the grounds were substantial and granted permission to defendants to seek dismissal again in the event that plaintiffs' challenge to the regulation failed. The grounds were primary jurisdiction and Beth Israel's alleged compliance with the maximum obligation imposed by the regulation's presumptive compliance guideline. Plaintiffs subsequently moved, in response to court instructions, for summary judgment declaring the regulation invalid. Although the motion was granted as to a single provision, the regulation as a whole survived the attack and remains in effect. 373 F.Supp. 550, Civ. No. 72–2654 (January 17, 1974). Consequently, the federal and Beth Israel defendants renew their motions to dismiss because of primary jurisdiction. The latter also move for summary judgment on the ground that the services they now provide exceed the presumptive compliance guideline.

Plaintiffs oppose the latter motion on two grounds. First, they controvert the figures submitted by the Beth Israel defendants to establish their presumptive compliance. Principally, however, they argue that providing medical care *only* in the emergency clinic cannot, no matter how great the volume, satisfy BIMC's obligation. The second argument finds support in our previous decision in which we held that a Hill Burton grantee could not unilaterally decide what type of services would satisfy the "reasonable volume" requirement of the statute. 359 F.Supp. at 917. We thus rejected the argument which underlies the renewed motion for summary judgment, namely, that providing services in the emergency room (or in any other portion of the hospital selected by the grantee) in an amount equal to or greater than the maximum requirement permitted by the regulation *ipso facto* satisfies the statutory requirement. *Id.* We left open the question who should determine the amount and type of services required under the regulation, since it raised the issue of primary jurisdiction, consideration of which was deferred. *Id.* at 917–18.

■ We turn now to the primary jurisdiction question. The statute requires that state plans be approved by the Secretary of Health, Education and Welfare (42 U.S.C. § 291d(b)) and administered by designated state agencies (*id.* at § 291d(a)(1)). It provides:

"Any State desiring to participate in this part may submit a State plan. Such plan must—

(1) designate a single State agency as the sole agency for the administration of the plan, or designate such agency as the sole agency for supervising the administration of the plan."
*Id.*

Thus, the Secretary, the Federal Hospital Council and the state agency (in this case, the New York State Department of Health) are Congress's chosen agents for carrying out all the purposes of the Act, including enforcement of the reasonable volume provision. In furtherance of their duties with regard to the latter, the Secretary and Council adopted the regulation at issue here, and we have previously upheld the regulation's validity. 373 F.Supp. 550 (Civ. No. 72–2654 (January 17, 1974)). The regulation sets guidelines for determining the amount (42 CFR § 53.111(d)) and the type (*id.* at § 53.111(h)(2)) of services required under the statute. It places the power to make these determinations in the hands of the state Hill-Burton agency and provides a detailed procedure to be followed in doing so.

Plaintiffs contend that deference to the state agency is nonetheless inappropriate, because the regulation, unlike the regulations which preceded it,[1] provides the court with a standard by which to judge BIMC's compliance with the "reasonable volume" requirement. They argue that promulgation of a detailed regulation leaves only an essentially judicial task, that of applying the standard to the case at hand, which we are as well equipped to perform as the state agency.

This view is overly mechanistic. It is true that the regulation provides a formula for computing the maximum cost of the uncompensated services which a funded facility is required to provide. This computation, however, merely provides a *maximum;* in its discretion, the agency can require a lesser amount. Furthermore, determining the amount of required services is not all that is necessary to decide whether a facility is complying with its obligations. As discussed above, a decision as to the *kind* as well as the amount of services required is inherent in the concept of "reasonable volume". The regulation reflects the necessity for this type of determination, by providing for annual computation of the required level of uncompensated services based on the following criteria:

"(i) The financial status of the applicant, taking account of income from all sources, and its financial ability to provide uncompensated services;

(ii) The *nature* and quantity of services provided by the applicant;

(iii) The *need* within the area served by the applicant for the provision, without charge or at a charge which is less than reasonable cost, *for services of the nature provided* or to be provided by the applicant; and

(iv) The extent and *nature* of joint or cooperative programs with other facilities for the provision of uncompensated services, and the extent and *nature* of outreach services directed to the *needs* of underserved areas." 42 C.F.R. § 53.111(h)(2). (Emphasis supplied)

The necessity for interpretation and a flexible approach is well illustrated by the case at hand. BIMC's grant totalling $400,000, it would comply with the regulation if it provided annually

---

1. The prior regulation merely restated the language of the statute and was found, in Perry v. The Greater Southeast Community Hospital Foundation, Civ. No. 725–71 (D.D. C., June 28, 1972), not to provide a sufficiently clear standard for a court to determine the adequacy of services rendered. *See* 359 F.Supp. at 912, n. 1.

$40,000 in uncompensated services. To require it to provide care within this limit in all its patient-care units would appear impractical if not unreasonable. Plaintiffs argue, on the other hand, and we have previously held, that to allow the hospital to allot the entire amount at will to any type of service it considers convenient would leave too much to its discretion. The regulation adopts neither a mechanistic formula for determining compliance nor gives full discretion to the grantee. Rather, it places the responsibility for deciding what amount and kind of services a funded facility must provide in the state agency designated for that purpose.[2] Furthermore, the procedure which it establishes provides, in a meaningful manner,[3] for input by both the grantee and interested persons and groups in the community, thus enabling the agency to reach its decision with the benefit, not merely of the statements and information provided by the grantee, but of the community's own views on its health needs.

In the circumstances, the case at hand appears to fit the classic primary jurisdiction mold. As the Supreme Court said in Great Northern R. Co. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922):

"To determine what rate, rule or practice shall be deemed reasonable for the future is a legislative or administrative function. . . . Preliminary resort to the [agency] . . . is required because the enquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the [agency]. Moreover, that determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts . . . is indispensable, and such acquaintance is commonly to be found only in a body of experts."

As the Court later stated in Far East Conference v. United States, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952), "in cases . . . requiring the exercise of administrative discretion, agencies . . . regulating the subject matter should not be passed over."

Plaintiffs cite Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), and argue that their inability to trigger the agency decision-making process renders deference to the agency improper here, as it was in *Rosado*. In that case, the Court rejected the primary jurisdiction argument, because "HEW has no procedures whereby welfare recipients may trigger and participate in the Department's review of state welfare programs." *Id.* at 406, 90 S.Ct. at 1215.

We think that this case differs significantly from *Rosado*. It is true that plaintiffs cannot themselves initiate the agency proceedings. However, the regulation makes commencement of agency review mandatory upon the hospital. It states:

"(1) Each applicant shall, not later than 120 days after the end of a fiscal

**2.** The New York State Department of Health is the agency designated pursuant to 42 U.S.C. § 291d(a)(1) and N.Y.Public Health Law § 2903, McKinney's Consol.Laws, c. 879, for overseeing the administration of Hill-Burton programs within the State.

**3.** The regulation provides that after the state agency has made an initial determination of the required level of uncompensated services, it will publish the rate in a newspaper of general circulation within the community served by the facility. Any person or organization representing persons residing in the area may submit written objections within 20 days of publication. A public hearing may be held, if warranted, with notice to all interested parties and the public. Within 80 days of publication, the agency must inform the objecting party in writing of its decision on the objection and the reasons for it. Notice of a final determination must be sent to all participating parties. Any party may request a review by the Secretary of HEW, who has the power to overturn the state agency's determination if unsupported by the evidence and to establish a new rate. 42 C.F.R. § 53.111(h)(4)–(6).

year, unless a longer period is approved by the State agency for good cause shown, file with the State agency a copy of its annual statement for such year. . . . (2) With respect to each fiscal year for which a level of uncompensated services has been established in accordance with this section, the annual statement shall also set forth the amount of uncompensated services provided in such year." 42 CFR § 53.111(e).

Filing the annual statement begins the process of setting a level of uncompensated services (*id.* at § 53.111(h)). Once the agency has made an initial determination of the level of required services, it must notify the hospital of its decision. *Id.* at § 53.111(h)(4). The regulation provides further:

"(4) . . . At the time of notifying the applicant, the State agency shall also publish as a public notice in a newspaper of general circulation within the community served by the applicant the rate that has been established, a statement that the documents upon which the agency based its determination are available for public inspection at a location and time prescribed, and that persons wishing to object to the rate can do so by writing to the State agency within 20 days after publication of the notice.

(5) The applicant or any person or persons residing or located within the area served by the applicant, or any organization on behalf of such person or persons, may submit to the State agency within 20 days of the publication and sending of the notice objections to the rate established by the State agency for the applicant. Such objections may be supported in writing by factual information and argument. The State agency shall give public notice of other receipt of the objections and shall make the objections and their supporting documents available for public inspection and

comment. It may, if it believes that determination of the objections will be assisted by oral evidence or by oral argument, set a public hearing on the objections and shall give notice of such hearing to all interested parties and to the public. The State agency shall within 60 days of the expiration of the period within which objections may be filed, rule upon the objections in writing, stating its reason for sustaining or overruling them, in whole or in part, and establishing finally the rate of uncompensated services either the same as, above or below the rate previously established, as may best accord with all of the evidence on file with or heard by the State agency. Notice of the final determination shall be mailed to all parties who filed objections or who participated in the proceedings leading to the redetermination." *Id.* at § 53.111(h).

An appeal to the Secretary of HEW by any participant aggrieved by the final determination is also provided for. *Id.* at § 53.111(h)(6). Accordingly, the regulation obliges the hospital to commence agency proceedings and provides plaintiffs with the right to participate in them. We think that this distinguishes the instant case from *Rosado,* in which no participation by plaintiffs was possible.

Plaintiffs request that we short-circuit the entire regulatory scheme on the off-chance that BIMC, in flat contravention of the regulation, will refuse to file its annual report. We see no reason to believe that the Beth Israel defendants will not abide by their acknowledged obligations under the regulation. In any event, the proper judicial response to this possibility is not anticipatory bypass of the regulatory scheme, but enforcement of the regulation's requirements should the occasion arise.

■ Accordingly, subject to the proviso that the Beth Israel defendants expeditiously file BIMC's annual statement with the state agency, the complaint

should be dismissed. Dismissal rather than a stay of judicial proceedings is appropriate. It will not prejudice plaintiff's right to a full remedy, since they seek an injunction against continuing conduct, rather than enforcement of a claim which might become time-barred. Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 222–223, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966); Maddock & Miller, Inc. v. United States Lines, 365 F.2d 98, 102 (2d Cir. 1966).

Accordingly, the motions of the Secretary of HEW and of BIMC and its directors to dismiss the complaint are granted. Since no further relief is sought against the remaining federal defendants, the complaint is dismissed in its entirety.

It is so ordered.

### On Motion To Amend

Plaintiffs move to amend this court's order of January 29, 1974, dismissing their complaint in its entirety. They seek substitution of an order that, as well as dismissing all claims against Beth Israel Medical Center, Ray E. Trussel and Jefferson Vorzimer, would 1) dismiss the complaint against the Secretary of Health, Education and Welfare and the members of the Federal Hospital Council, except as to the second and fifth claims for relief; 2) order the Secretary to require the New York State Department of Health to implement the Hill-Burton Act in accordance with the prior rulings in this case; and 3) order the Secretary and the members of the Federal Hospital Council to substitute for 42 C.F.R. § 53.111(f)(1) an earlier version of that provision previously rejected by the Council.

Plaintiffs' suggestion that we not dismiss the complaint's second claim for relief and that we order the Secretary to require the state agency to act in accordance with our earlier interpretation of the regulation does not follow from our prior decisions. Plaintiffs rely on our holding that a state agency implementing the Act and the regulation thereunder must, in determining whether a Hill-Burton recipient is providing a "reasonable volume of services," consider not merely the amount, but the kind of services provided. Memorandum Opinion of June 1, 1973. 359 F.Supp. 909, 917. For two reasons, however, that ruling does not entitle plaintiffs to the requested injunctive relief against the Secretary.

First, plaintiffs never obtained, and indeed never sought judgment as to that issue. The ruling in question merely decided, on a motion to dismiss, that the complaint stated a claim upon which relief could be granted.

Second, and more important, the order which plaintiffs seek may be unnecessary and would, in any event, be inconsistent with holdings of the court. Nothing in the regulation itself conflicts with plaintiffs' position. To the contrary, the regulation requires the state agency in setting the level of services which constitutes a reasonable volume of services under the Act to consider the kind as well as the amount of services needed by the community which is served by the Hill-Burton grantee. Specifically, the regulation provides that, in establishing the level of services required of a grantee, the state agency must apply the following criteria: "The nature and quantity of services provided by the applicant; [and] [t]he need within the area served by the applicant to the provision, without charge or at a charge which is less than reasonable cost, for services of the nature provided or to be provided by the applicant." 42 C.F.R. § 53.111(h)(2)(ii) and (iii). Furthermore, we have previously held, and we again state, that a determination by the state agency under the Act and the regulation of what constitutes a reasonable volume of services requires it to decide what portion or portions of a facility must be made available to persons who are unable to pay for services. Memorandum

**564**

of June 1, 1973. 359 F.Supp. 909. If, as plaintiffs predict, the state agency actually will not comply with the requirements of the regulation as interpreted, appropriate remedies would then be available in this court.

We believe that it is inappropriate to speculate at this time as to how the agency will proceed in setting Beth Israel's level of uncompensated services. We have previously unambiguously held that this determination falls squarely within the agency's primary jurisdiction and that plaintiffs and the members of their class should *ab initio* seek relief from the agency by participating in the procedure established by the regulation for enforcing the "reasonable volume" requirement. 373 F.Supp. 559. Memorandum Opinion of January 29, 1974. As we stated above, if the agency should depart from this court's interpretation of the regulation, plaintiffs would not be without remedy here.

As to plaintiffs' fifth claim for relief, they are clearly correct that our dismissal of the complaint in its entirety is inconsistent with our granting of partial summary judgment declaring invalid 42 C.F.R. § 53.111(f)(1), and the order of January 29, 1974, must be modified accordingly. However, we decline to accept plaintiffs' invitation to order the Secretary and the Federal Hospital Council to substitute a provision proposed by plaintiffs for the provision which we struck down. Plaintiffs' proposed language is, indeed, consistent with our decision, and the Secretary and Council might be well-advised to adopt it. However, it is their function, not ours or the plaintiffs, to formulate regulations under the Act. The role of this court is limited to ensuring that the provision they substitute is in accordance with the Act as interpreted.

Plaintiffs' motion to amend the order of January 29, 1974, is granted to the extent indicated above. Settle order on notice.