MEMORANDUM OPINION
 

 BUA, District Judge.
 

 This cause comes before the court on motions for summary judgment, brought by all parties pursuant to F.R.Civ.P. 56. There being no disputed questions of material
 
 *1279
 
 fact, the motions will be dealt with as a matter of law.
 

 Plaintiff, American Hospital Association (hereinafter AHA), seeks review pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, of various regulations promulgated under the authority of Titles VI (the “Hill-Burton Act”) and XVI of the Public Health Service Act, 42 U.S.C. § 291
 
 et seq.
 
 and 42 U.S.C. § 300q
 
 et seq.
 
 (1976 and 1980 Supp.) respectively. The regulations are codified at 42 C.F.R. §§ 124.501
 
 et seq.
 
 and 124.601
 
 et seq.
 
 No challenge has been made to the procedure by which the regulations were issued. Rather, plaintiff challenges these regulations on substantive grounds contending that they: 1) retroactively impair contractual rights and thus violate the fifth amendment due process provision of the Constitution and 2) are beyond the scope of the authorizing statute.
 

 The regulations define the manner in which health care providers must comply with two assurances they gave in return for receipt of federal construction funds under the Hill-Burton Act. These assurances required providers to “make available a reasonable volume of services to persons unable to pay” (the charity care assurance) and to make their facilities “available to all persons” residing in their service area (the community service assurance.) 42 U.S.C. §§ 291c(d), 300s-l(b)(l)(k).
 

 Formerly, compliance with the charity care assurance was brought about by means of an “open-door” policy which required providers to certify that no person would be denied medical care because of inability to pay. 42 C.F.R. 42-lll(d)(2). The new regulations eliminate this open-door policy and set strict compliance standards at 3% of the facilities’ operating costs or 10% of federal assistance received (adjusted to account for inflation) whichever is less. 42 C.F.R. § 124.503(a). Deficits and excesses in compliance in a given year are carried over to subsequent years as an adjustment to that year’s compliance requirement. 42 C.F.R. § 124.503(b), (c) and (d). In the case of a deficit an “affirmative action” program is required. 42 C.F.R. § 124.504. Sections 124.502 and 124.509 provide for methods to determine what qualifies as charity care. The compliance requirements apply to recipients of Title VI loans until the loan is repaid. 42 C.F.R. § 124.501(b).
 

 The community service assurance regulations prohibit exclusion of persons in the provider’s territorial area on grounds other than need for the service or availability of the service in that facility. 42 C.F.R. § 124.603(a). Section 124.603(a) also allows denial of non-emergency services to those unable to pay for them unless such person qualifies for charity care. Section 124.-603(c) requires providers to make arrangements to provide access to Medicare and Medicaid programs. Certain exclusionary policies are prohibited by § 124.603(d).
 

 Regulations were also promulgated for both assurances regarding notice to patients (124.505, 124.603), investigation and enforcement (124.511, 124.606) and reporting and records (124.510, 124.605).
 

 I.
 

 The regulations in question have been promulgated pursuant to two statutes. The original authorizing statute is the Hill-Burton Act. The wording of the statute is broad.
 
 [1]
 
 It encompasses both the power to
 
 *1280
 
 promulgate initial regulations
 
 [2]
 
 and to modify regulations related to compliance with assurances given as a condition of funding under the statute. Plaintiff challenges the constitutionality of the regulations promulgated pursuant to the authorizing statute, charging that they retroactively impair contractual rights in violation of the due process component of the fifth amendment. It is this court’s conclusion that plaintiff’s argument is without merit.
 

 Plaintiff contends that it has been deprived of due process on two overlapping grounds: 1) that the regulations allegedly alter and impair the health care providers’ contractual rights and 2) that the regulations operate retroactively to alter pre-existing obligations of the providers. Since any alteration of a contractual right against the federal government is necessarily a due process problem
 
 [3]
 
 and since an existing, ex-ecutory contract could only be altered by regulations which operate retroactively,
 
 [4]
 
 plaintiff’s arguments are really one- — that it has been deprived of property rights without due process.
 
 See Lynch v. U.S.,
 
 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).
 

 Plaintiff’s contention, cast in due process language, is that property rights which were acquired by contract with the federal government have been violated by the promulgation of the challenged regulations. Plaintiff asserts that the forms and applicable regulations involved in obtaining Hill-Burton funds constitute a contract. The relevant forms oblige the health care providers to give assurances of charity care and community service and oblige the government to give federal funds in return. Although these forms, in and of themselves, could not constitute a contract because of the indefiniteness of their terms,
 
 AS&W Club of Waukegan v. Drobnick,
 
 26 Ill.2d 521, 187 N.E.2d 247 (1962);
 
 Brewer v. Daubert Chemical Corp.,
 
 72 Ill.App.3d 718, 28 Ill.Dec. 911, 391 N.E.2d 110 (1979), plaintiff maintains that the regulations in force at the time its members received Hill-Burton funds were incorporated into the alleged agreement, thus making the obligations contained in the application forms definite and enforceable.
 

 In several cases dealing primarily with the issue of implying a private right of action for the indigent third party beneficiaries of the alleged contract, courts have indicated that they accept the existence of a contractual relationship created by the forms; however, none of the holdings have specifically discussed whether the regulations are incorporated into the contract.
 
 Euresti v. Stenner,
 
 458 F.2d 1115 (10th Cir. 1972);
 
 Corum v. Beth Israel Med. Ctr.,
 
 359 F.Supp. 909 (S.D.N.Y.1973);
 
 AHA v. Harris,
 
 625 F.2d 1328 (7th Cir. 1980) (dissenting opinion). Assuming, for the moment, the validity of these court’s findings that a contract exists, it is nevertheless true that since, as is shown below, the Secretary has the power to modify the regulations after the federal funds have been paid, this power was also a part of the terms of any contract that may have arisen.
 
 Cf. Ogden v. Saunders,
 
 25 U.S. 212, 12 Wheat 213, 6 L.Ed. 606 (1827).
 

 The Secretary’s power to modify the regulations in question has been demonstrated in several recent cases. In
 
 Austin Welfare Rights Organization
 
 v.
 
 St. Davis Community Hosp.,
 
 No. A-78-CA-63 (W.D.Texas, March 13, 1980), the court, in construing the grant of regulatory authority
 
 [5]
 
 to the Secretary contained in the Hill-Burton Act found no retroactivity problem in the promulga
 
 *1281
 
 tion by the Secretary of regulations which modified those in effect when the defendant hospital gave its original charity care and community assurances. The court stated,
 

 Approval of the hospital’s application for Hill-Burton funds was made conditional on an assurance that in the operation of the project there will be compliance with the applicable requirements of the regulations prescribed under § 291c(e) of this title ... 42 U.S.C. § 291e(b)(3).
 
 This statutory provision is sufficient to put the hospital on notice that new or additional regulations to which it would be subject might be promulgated in the future.
 

 Austin
 
 at 2 — 3 (emphasis added).
 

 Similarly in a recent case upholding the regulations challenged here against an essentially identical attack, the court stated,
 

 Although Congress did not specify in 42 U.S.C. § 291c(e) exactly how the assurances were to be enforced, it can hardly be said that Congress would have authorized the establishment of such assurances without delegating the power to ensure compliance. Where a delegation of power is made to an administrative agency, the authority to take appropriate action to affectuate that power will be implied.
 
 Morton v. Ruiz,
 
 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974);
 
 Northern States Power Co. v. Federal Power Comm.,
 
 118 F.2d 141 (7th Cir. 1941);
 
 Gallagher’s Steak House v. Bowles,
 
 142 F.2d [530], 531 (2d Cir. 1944).
 

 Wyoming Hospital Association v. Harris,
 
 527 F.Supp. 551, 556 (D.Wyo.1981). This implied power includes the power to modify regulations to ensure effective compliance with the assurances given. Congress gave the Secretary broad power originally because it wanted to leave the administration of the assurances fluid and allow the agency to adjust to unforeseen contingencies in effecting compliance.
 
 See Mourning v. Family Publications Service,
 
 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973);
 
 Matson Navigation Co. v. Connor,
 
 258 F.Supp. 144 (N.D.Cal.1966)
 
 aff’d
 
 394 F.2d 514,
 
 cert. den.
 
 393 U.S. 998, 89 S.Ct. 482, 21 L.Ed.2d 463. “Any new regulations would not alter the nature of the assurances given under the Hill-Burton Act but rather would enforce them as given ...”
 
 Lugo v. Simon,
 
 426 F.Supp. 28, 33 (N.D.Ohio 1976).
 
 [6]
 

 Even if the power to modify the regulations were not contained in Title VI, Congress has given that power to the Secretary as a result of its passage of Title XVI, 42 U.S.C. 300q
 
 et seq.
 
 This action on the part of Congress invokes no due process problem.
 

 Constitutional claims similar to those raised by AHA have been rejected by the Supreme Court in at least two cases. One example is
 
 FHA
 
 v.
 
 The Darlington,
 
 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958). Congress, in 1954, had added to the National Housing Act a new section which explicitly prohibited rentals to transients. The section was added subsequent to the time when the renting corporation had received its federal mortgage insurance. The Court upheld the section of the statute, emphasizing that the act did not penalize the corporation for having rented to transients in the
 
 *1282
 
 past but merely sought to more effectively further the statutory purpose of providing housing for veterans. Quoting
 
 Fleming v. Rhodes,
 
 331 U.S. 100, 107, 67 S.Ct. 1140, 1144, 91 L.Ed. 1368 (1947), the court stated, “Federal Regulation for future action based upon rights previously acquired by the person regulated is not prohibited by the Constitution . . . [T]he fact that its [the statute’s] provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts.” 358 U.S. at 91, 79 S.Ct. at 146.
 

 Similarly, in
 
 Usery v. Turner Elkhorn Mining Co.,
 
 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1975), the Court again upheld federal legislation that upset the contractual rights of the parties challenging the legislation. The challenged statute imposed on employers the obligation to pay disability and death benefits for Black Lung disease for current employees and for employees who had ceased employment prior to passage of the act. The Court found that the legislation was a rational means to a valid legislative end and stated that “. . . our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations [citations omitted].” 428 U.S. at 16, 96 S.Ct. at 2892.
 

 Although
 
 Turner Elkhorn
 
 and
 
 The Darlington
 
 deal with statutes rather than regulations, the same principles should apply to regulations issued pursuant to statutory authority.
 
 Thorpe v. Housing Authority,
 
 393 U.S. 268, 280 fn. 35, 89 S.Ct. 518, 525 fn. 35, 21 L.Ed.2d 474 (1968), There is no significant difference between Congress itself making retroactive adjustments, as in the above-cited cases, and Congress authorizing the Secretary to make the adjustments, as in this case. So long as the means employed are a rational means to ensure a valid legislative end the regulations will be upheld despite any unsettling of the parties’ expectations.
 

 Several lower court cases presenting an analogous problem involved the retroactive application of a regulation which recaptured reimbursed depreciation if a Medicare health care provider ceased or decreased services.
 
 See Summit Nursing Home, Inc. v. U.S.,
 
 572 F.2d 737 (Ct.Clms.1978);
 
 Springdale Convalescent Ctr.
 
 v.
 
 Mathews,
 
 545 F.2d 943 (5th Cir. 1977);
 
 Cf. Daughters of Miriam Ctr. for the Aged v. Mathews,
 
 590 F.2d 1250 (3d Cir. 1978). Both
 
 Summit
 
 and
 
 Springdale
 
 upheld the retroactive application of the regulation against a due process argument such as AHA makes in the instant case. In
 
 Summit,
 
 the Court stated that the providers knew that they would be subject to future regulation by the Secretary since the Secretary had the right to issue regulations to cure the defects arising from prior administration of the program. The
 
 Daughters of Miriam
 
 court upheld the retroactive application to providers who had been terminated rather than been discontinued.
 
 [7]
 

 The regulations in question are a rational means to a valid legislative goal — providing health care facilities and services to those who cannot afford them. As stated by the Supreme Court in
 
 The Darlington,
 
 “[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.” 358 U.S. at 91, 79 S.Ct. at 146.
 

 II.
 

 In addition to its due process challenge, plaintiff argues that the regulations are invalid because they are not within the scope of statutory authority under the Hill-Burton Act. The statute is framed in general terms and obviously contemplates a significant interpretive role on the part of the Secretary.
 
 [8]
 
 It states broadly that assurances may bbf. required. The only limita
 
 *1283
 
 tions on the scope of the assurances are: 1) that the persons to whom services are available must reside “in the territorial area of the applicant,” 2) that the amount of services must be a “reasonable volume” and 3) that the foregoing assurances apply to “the facility or portion thereof to be constructed or modernized.” The statute also provides for an exception to the giving of the reasonable volume assurance where it is financially unfeasible for the health care provider to do so. Additionally, Congress has expressly required as a separate prerequisite to financial assistance, “an assurance that in the operation of the project there will be compliance with the applicable requirements of the regulations prescribed under § 291c(e) of this title ...” 42 U.S.C. § 291e(b)(3).
 

 Where Congress has used such broad language, courts have rightfully found that the legislature has contemplated that regulations will be issued to give the assurances meaningful content.
 
 See Citizens to Save Spencer City v. EPA,
 
 600 F.2d 844 (D.C.Cir. 1979) and cases cited therein at 874. The interpretation required for the giving of such content is the province of the Secretary in charge of the administration of the statute, and the Secretary’s interpretation is entitled to great weight.
 
 Udall v. Tallman,
 
 380 U.S. l, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964);
 
 Unemployment Commission v. Aragon,
 
 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946). This deference is especially legitimate where, as here, Congress has re-enacted the underlying statute after the agency has issued regulations construing that statute. When Congress acts in this manner without altering the administrative construction, the reenactment constitutes an implied approval of the agency’s actions.
 
 See Red Lion Broadcasting Co. v. FCC,
 
 395 U.S. 367, 380-81, 89 S.Ct. 1794, 1801-02, 23 L.Ed.2d 371 (1969) and cases cited therein at n.10. Further, Congress implicitly affirmed the agency action when it passed the public Health Service Act of 1974 which expressly required the Secretary to issue such regulations.
 

 It is argued that the statute merely authorizes the Secretary to issue regulations requiring the giving of the assurances at the time of funding and that Congress did not intend that these assurances guarantee indigents any type of health care. This argument is without merit. There is no basis for the proposition that Congress intended that health care providers be left with the discretion to determine what constitutes compliance with these assurances. In fact, it is reasonable to assume that Congress contemplated leaving this determination to the expertise of the agency charged with enforcement and expected regulations to be issued which would give substance to otherwise hollow assurances.
 
 Cf. Udall v. Tallman,
 
 380 U.S. 1, 16-18, 85 S.Ct. 792, 801-802, 13 L.Ed.2d 616 (1964);
 
 Unemployment Commission v. Aragon,
 
 329 U.S. 143, 153-4, 67 S.Ct. 245, 250-51, 91 L.Ed. 136 (1946).
 

 Case law construing the statute supports a finding that the regulations are within the scope of the statutory grant. In several cases dealing with challenges to regulations promulgated under § 291c(e) which imposed
 
 maximum
 
 time and amount limits on compliance with the assurances given by health care providers, courts have found that the language of the statutory section gave the Secretary authority to issue regulations setting forth standards for compliance with the Hill-Burton assurances.
 
 Cook v. Ochsner Foundation Hospital,
 
 559 F.2d 968 (5th Cir. 1977);
 
 Lugo v. Simon,
 
 426 F.Supp. 28 (N.D.Ohio 1976);
 
 Corum v. Beth Israel Medical Center,
 
 373 F.Supp. 550 (S.D. N.Y.1974). Ironically, it is the same class of parties that contended in those cases that the statute authorized the Secretary to set a maximum compliance standard who now argue that the same statute does not give the Secretary authority to set a minimum compliance's standard.
 

 Further support for this court’s holding is found in the statute’s legislative history. A clear purpose of the Hill-Burton Act was to provide care for the indigent. As one supporter, Senator Ellender, stated,
 

 
 *1284
 
 If people in all localities were able to pay for hospitalization there would be no need for this bill. It seems to me that our primary purpose should be to devise means to take care of those who cannot take care of themselves. My reason for supporting a bill providing for Federal aid to build hospitals is to make it easy for the community in which a hospital is built to give aid to the indigent.
 

 Hearings before the Committee on Education and Labor on S. 191,
 
 U.S. Senate, 79th Congress, 1st Session, March 12, 1945 at 190-191.
 
 See also Cook v. Ochsner Foundation Hospital,
 
 559 F.2d 968 (5th Cir. 1977);
 
 Euresti v. Stenner,
 
 458 F.2d 1115 (10th Cir. 1972);
 
 Wyoming Hospital Association v. Harris,
 
 527 F.Supp. 551 (D.Wyo.1981);
 
 Corum v. Beth Israel Medical Ctr.,
 
 359 F.Supp. 909 (S.D.N.Y.1973);
 
 Cook v. Ochsner Foundation Hospital,
 
 319 F.Supp. 603, 606 (E.D. La.1970).
 

 It is true that, as plaintiff contends, a review of the legislative history indicates that the primary purpose of the Hill-Burton Act was provision of facilities through federal funding.
 
 American Hospital Association v. Harris,
 
 625 F.2d 1328 (7th Cir. 1980) (dissenting opinion). However, this does not negate the fact that both the express provision for assurances of care for the indigent in the Act and the legislative history leading to the inclusion of those assurances undeniably demonstrate another significant purpose of the Act — that the health care providers benefitting from this federal funding must in return provide care to the real beneficiaries of the entire program, namely those unable to pay for health care themselves.
 
 See Euresti v. Stenner,
 
 458 F.2d 1115, 1118 (10th Cir. 1972);
 
 Cook v. Ochsner Foundation Hospital,
 
 319 F.Supp. 603 (E.D.La.1970).
 

 Plaintiff’s argument that the regulations must be rejected because they are allegedly in violation of § 291m of the Hill-Burton Act must fail. The section states:
 

 Except as otherwise specifically provided, nothing in this subchapter shall be construed as conferring on any Federal officer or employee the right to exercise any supervision or control over the administration, personnel, maintenance, or operation of any facility with respect to which any funds have been or may be expended under this subchapter.
 

 Plaintiff contends that the regulations covering the admission procedures of the hospital, along with other regulations, intrude into the financial, administrative and medical operations of the hospital.
 

 This argument ignores the first clause of the section which expressly states that it is subject to exceptions “as otherwise specifically provided.” This is such a case. Sections 291c(e) and 291e(b)(3) provide that assurances can be required and that the Secretary has authority to issue regulations defining compliance with these assurances. It is a cardinal rule of statutory construction that the provisions of a statute are to be read as a whole.
 
 Philbrook v. Glodgett,
 
 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975);
 
 Kokoszka v. Belford,
 
 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974),
 
 reh. den.
 
 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131. Further, as previously stated, the interpretation given the statute by the administrative agency is due great deference. Therefore, since § 291c(e) provides an exception as authorized by § 291m and since the Secretary has interpreted it as doing so, plaintiff’s argument is rejected.
 

 Plaintiff’s final attack charges that even if the specific regulations are found to be within the scope of the statute, they must nevertheless be found to be unreasonable.
 

 Regulations, even if found, as in this case, to have been promulgated with regard to a subject matter within the scope of the Secretary’s authority may be struck down under 5 U.S.C. § 706(2)(A) if they are “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.” “To make this finding the court must consider whether the decision is based on a consideration of the relevant factors and whether there has been a clear error in judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one.”
 
 Citizens to Preserve Overton Park v.
 

 
 *1285
 

 Volpe,
 
 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Where, as here, there is no challenge to the administrative proceeding or the hearing record and the regulations are challenged on a substantive level the court is limited to review of the record before the agency.
 
 Citizens to Preserve Overton Park v. Volpe,
 
 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971);
 
 National Broadcasting Co. v. U.S.,
 
 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943).
 

 Much is made by plaintiff of the hardship imposed on its members by the regulations in question. While this court is not unsympathetic to their plight, it cannot substitute its judgment for that of the agency.
 
 Bowman Transportation Inc. v. Arkansas Best Freight System, Inc.,
 
 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974);
 
 U.S. v. Allegheny Ludlum Steel Corp.,
 
 406 U.S. 742, 749, 92 S.Ct. 1941, 1946, 32 L.Ed.2d 453 (1972).
 

 It is well established that a regulation will not be found inconsistent with a statute unless
 

 the variance is so clear that it is manifest that the court has no choice except to hold that the administrator has exceeded his authority and employed means that are not appropriate to the end specified in the act.
 

 Lugo v. Simon,
 
 426 F.Supp. at 34
 
 quoting Gardner v. U.S.,
 
 239 F.2d 234, 237 (5th Cir. 1956). A court must uphold agency action which has a rational basis.
 
 Bowman Transportation Inc., supra. A
 
 regulation must be sustained so long as it is reasonably related to the purposes of the enabling legislation.
 
 Mourning v. Family Publications Service, Inc.,
 
 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973).
 

 It is clear that the regulations as previously issued failed to exact effective compliance with the Hill-Burton assurances. Numerous actions were brought both in court and before the Department of Health, Education and Welfare (now Health and Human Services), the administrative agency charged with enforcement, to enforce compliance with these assurances.
 
 See e.g. Cook v. Ochsner Foundation Hospital,
 
 559 F.2d 968 (5th Cir. 1977);
 
 Euresti v. Stenner,
 
 458 F.2d 1115 (10th Cir. 1972);
 
 Perry v. Cape Cod Hosp.,
 
 decision on Admin. Complaint (Suffolk, Mass., March 14, 1979);
 
 In re: St. Davids Community Hosp.,
 
 decision on Admin. Complaint, (Austin, Texas, June 2, 1978);
 
 In re: Seminole Mem’l Hosp.,
 
 decision on Admin. Complaint (Sanford, Fla., March 27, 1978).
 

 The regulations in question and the substantial administrative record have been reviewed. There is ample support in that record for the regulations as issued by the Secretary. They are a reasonable means of ensuring compliance with assurances given pursuant to the Hill-Burton Act and, thus, are not arbitrary or capricious.
 

 III.
 

 Since plaintiff has asserted no grounds upon which this court could possibly declare the regulations in question invalid, plaintiff’s motion for summary judgment is denied and defendants’ cross-motions for summary judgment are granted.
 

 [1]
 

 . The full text of the relevant section is as follows:
 

 The Surgeon General, with the approval of the Federal Hospital Council and the Secretary of Health, Education, and Welfare, shall by general regulations prescribe—
 

 (e) that the State plan shall provide for adequate hospitals, and other facilities for which aid under this part is available, for all persons residing in the State, and adequate hospitals (and such other facilities) to furnish needed services for persons unable to pay therefor. Such regulations may also require that before approval of an application for a project is recommended by a State agency to the Surgeon General for approval under this part, assurance shall be received by the State from the applicant that (1) the facility or portion thereof to be constructed or modernized will be made available to all persons residing in the territorial area of the applicant; and (2) there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of
 
 *1280
 
 services to persons unable to pay therefor, but an exception shall be made if such a requirement is not feasible from a financial viewpoint.
 

 42 U.S.C. § 291c
 

 [2]
 

 .
 
 See
 
 discussion, pp. 2-17,
 
 supra.
 

 [3]
 

 . The contract clause by its very terms applies only to state action. U.S.Const. Art. I § 10 cl. 1.
 

 [4]
 

 . The substantive provisions of the regulations apply prospectively only. There is no provision for reassessing compliance in the past under the new standards. The regulations do, however, apply retroactively insofar as they apply to assurances given by hospitals prior to the promulgation of the new regulations.
 

 [5]
 

 .
 
 See
 
 discussion, pp. 2-17,
 
 supra.
 

 [6]
 

 . The regulations are to
 

 prescribe the general manner in which each entity which . . . has received financial assistance under Part A or B or [Title XVI] subchapter IV of this chapter [Title VI] shall be required to comply with the assurances required to be made at the time such assistance was received and the means by which such entity shall be required to demonstrate compliance with such assurances.
 

 42 U.S.C. § 300s(3). Additionally,
 

 An application for a medical facilities project shall be submitted in such form and manner as the Secretary shall by regulation prescribe and shall, except as provided in paragraph (2), set forth .. .
 

 (K) reasonable assurance that at all times after such application is approved (1) the facility or portion thereof to be constructed, modernized, or converted will be made available to all persons residing or employed in the area served by the facility, and (ii) there will be made available in the facility or portion thereof to be constructed, modernized, or converted a reasonable volume of services to persons unable to pay therefor and the Secretary, in determining the reasonableness of the volume of services provided, shall take into consideration the extent to which compliance is feasible from a financial viewpoint.
 

 42 U.S.C. § 300s-1(b)(1)
 

 [7]
 

 . The court refused to uphold the retroactive application to discontinued providers since the regulation in question suffered from procedural infirmities in its issuance, 590 F.2d at 1255, a problem not encountered in the case at bar.
 

 [8]
 

 .
 
 See
 
 full text of relevant section, n.6, p. 1287,
 
 infra.