Claude Wilson GORDON et
al., Plaintiffs,

v.

FORSYTH COUNTY HOSPITAL AU-
THORITY, INC., et al., Defendants.

No. C–75–25–WS.

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Sept. 11, 1975.

Memorandum Order and Judgment
filed Jan. 15, 1976.

B. Ervin Brown, II and James C. Gulick, Winston-Salem, N. C., for Legal Aid Society of Forsyth County, for plaintiffs.

Roddey M. Ligon, Jr., and Kathrine S. Miller, of Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

HIRAM H. WARD, District Judge.

This action came on for hearing before the Court on July 8, 1975, on cross motions by the parties for summary judgment. The parties have stipulated as to certain of the material facts and have submitted interrogatories and depositions. All parties have agreed that there is no dispute as to any material fact in the case and that the matter is ready in all respects to be decided by the Court on the questions of law presented.

The plaintiffs seek declaratory and injunctive relief in a class action against the Forsyth County Hospital Authority, Inc., (Hospital Authority) and its officers requiring the defendants to provide the plaintiffs and others similarly situated with free hospital and medical care at Forsyth Memorial Hospital (Forsyth) and Reynolds Memorial Hospital (Reynolds), which are located in Winston-Salem, North Carolina, pursuant to the provisions of the Hospital Survey and Construction Act of 1946, 42 U.S.C. § 291 et seq. (hereinafter referred to as the "Hill-Burton Act" or "the Act"), and the implementing regulations of the Department of Health, Education, and Welfare issued in accordance therewith, 42 C.F.R. § 53.111.

In the alternative, should the Court determine that the terms of the Act apply only to Forsyth, the plaintiffs seek an injunction requiring defendants (a) to provide each of them with uncompensated care within the meaning of the Act at Forsyth and to notify patients at the time of their admission to Forsyth of their eligibility for such care; (b) to cease transferring those patients who are eligible for uncompensated care within the meaning of the Act from Forsyth to Reynolds; (c) to cease the practice of reporting uncollectible debts at Reynolds for the purpose of fulfilling its obligation to provide uncompensated care within the meaning of the Act at Forsyth; and (d) to notify eligible recipients under the Act at the time of their proposed admission to Reynolds that the required medical and hospital services are available free of charge at Forsyth.

 The jurisdiction of this Court is based upon 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. §§ 1983 and 1985(3).[1]

---

1. It should be noted that while the Court accepts as correct the jurisdictional allegations in the complaint as to a portion of the claim for relief, the Court rejects jurisdiction based on 42 U.S.C. § 1985(3). That statute is intended to redress a deprivation of equal protection,

Based upon the record and stipulations of the parties, the Court makes the following Findings of Fact.

## Findings of Fact

1. Forsyth is owned by the County of Forsyth and was constructed on the west side of Winston-Salem with the aid of Hill-Burton funds and with funding from county bonds and donations. The hospital was opened in May 1964 and was operated by the County of Forsyth through 1968, at which time the hospital was leased to the Hospital Authority. Hill-Burton funds were received by Forsyth County for the following construction and modernization projects at Forsyth Memorial Hospital:

 (a) April, 1964 – $4,500,000 – Construction–New 540-bed hospital

 (b) September, 1964 – $506,000 – Construction – 200-bed School of Nursing

 (c) August, 1966 – $432,575 – Construction – 60-bed Long Term Care Unit

 (d) November, 1971 – $366,427 – Construction – Rehabilitation Center

2. Reynolds was built by the City of Winston-Salem on the east side of the city. The hospital was opened in January 1970 and title to the hospital property was transferred to the county of Forsyth in 1972. Also in 1972 the hospital was leased to the Hospital Authority, and that lease continued to on or about July 1, 1975, when the Forsyth County Board of Commissioners took over the control and operation of Reynolds.

3. Reynolds was built without the aid of any Hill-Burton funds, and it has not received Hill-Burton funds for any other purpose. Reynolds provides certain free care to patients, but not pursuant to the Hill-Burton Act, and persons who are admitted as patients to Reynolds are not told that the same services provided at Reynolds may also be available at Forsyth to qualified Hill-Burton patients.

4. The Hospital Authority is governed by a twenty-four member Board of Trustees appointed by the Forsyth County Board of Commissioners and by the Winston-Salem Board of Aldermen. The chief executive officer is the president who is appointed by the Board of Trustees. While the medical-dental staffs and certain managerial functions have been consolidated for efficiency, the two hospitals operate as separate divisions, and the revenues and assets of one hospital may not be used to provide services at the other. Each hospital has separate contracts (and separate provider numbers) with Medicare, Medicaid, and Blue Cross. Separate accounting records and separate bank accounts are maintained for each hospital although federal and state taxes are paid jointly under single I.D. numbers. In the past, working capital has been advanced from one hospital to the other, but these advancements are temporary in nature and are required to be repaid.

5. Reynolds operates (a) the out-patient clinic known as the Forsyth County Family Health Center, (b) an in-patient general nursing unit of fifty beds primarily for patients who no longer need to be near surgical, cardiac monitoring facilities, or the like, and (c) a 28-bed psychiatric unit to which patients needing both mental health care and alcoholic rehabilitation are admitted. None of these sections of Reynolds have received Hill-Burton assistance. Forsyth is a 740-bed general hospital providing all services commonly found in an acute care hospital.

6. Forsyth elected the "3% of operating costs" method of satisfying its Hill-Burton obligation pursuant to the provisions of 42 C.F.R. § 53.111(d) during the

or equal privilege and immunities, where there is some racial, or perhaps otherwise class-based, invidiously discriminating animus behind the conspirator's action. *See Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The stipulated facts before the Court fail to reveal any class-oriented, conspiratorial, and invidious animus on the part of the Hospital Authority. To the contrary, the actions of the Hospital Authority appear to have been a genuine attempt to comply with an admittedly complex and evolving area of social legislation.

year of July 1, 1973, through June 30, 1974. During the 1973–74 fiscal year, Forsyth filed a compliance report stating net operating costs of $11,257,870 for that year and reporting $348,661 as the amount of uncompensated services provided, or almost $11,000 more than the required 3% figure of $337,736.[2] In computing the 3% figure of uncompensated services provided by Forsyth, amounts expended by Reynolds, or any of its subdivisions such as the Family Health Cen-

2. The following report was filed on behalf of Forsyth by Harold G. Koach, President, with the Department of Human Resources, Division of Facility Services, State of North Carolina, on October 24, 1974:

Forsyth Memorial Hospital
Uncompensated Services Required and Provided
During 1973–74
For Compliance With Hill-Burton Assistance Requirements

| COMPUTATION OF 3 PERCENT OF OPERATING COSTS | ACTUAL 1973–74 | BUDGET 1974–75 |
|---|---|---|
| Total Operating Costs | $20,571,702 | $23,664,899 |
| Less Adjustments Per Medicare Cost Determination Principles | 1,996,031 | 2,136,236 |
| Adjusted Operating Costs | $18,575,671 | $21,528,663 |
| Less Costs Attributable to Medicare/Medicaid | 7,317,801 | 8,418,775 |
| Net Operating Costs | $11,257,870 | $13,109,888 |
| | x .03 | x .03 |
| 3% Net Operating Costs | $ 337,736 | $ 393,297 |
| AMOUNT OF UNCOMPENSATED SERVICES PROVIDED— | $ 348,661 | |

FORSYTH MEMORIAL HOSPITAL
UNCOMPENSATED SERVICES PROVIDED
DURING 1973–74

1. Charges written-off for services provided during 1973–74 to patients identified by hospital (through 10/20/74) as being eligible recipients of uncompensated care according to established Hill-Burton criteria. (List of patient recipients available in Forsyth Memorial Hospital). $234,016

2. Charges written-off for services provided during 1973–74 to patients identified by State and County Welfare Agencies (List of patient recipients available in Forsyth Memorial Hospital). 19,286

3. Estimated amount of uncompensated care, unidentified by individual patient recipients, rendered to out-patients. (Primarily Emergency Room patient recipients. No system established for determining family size and income level due to (1) staffing cost involved, (2) inconvenience to patient and physician during emergency treatment situations, and (3) not in the best interest of rendering patient care.) 95,359

Total Forsyth Memorial Hospital $348,661

Section 3 of the Report of Uncompensated Services Provided does not follow the guidelines set forth in 42 C.F.R. § 53.111(f), *Qualifying Services,* which requires a written determination be made by the hospital of services provided to an individual prior to any collection effort other than the rendition of bills. Presumably, this method of operation was approved by the Department of Human Resources because of the justification shown on the report and permitted by 42 C.F.R. § 53.111(e)(3)(i).

ter, for uncompensated health care were not counted to meet the Hill-Burton requirement.[3]

7. Forsyth's credit policy requires that patients whose admission is elective[4] must either pay a deposit or show proof of third-party coverage (e. g.,

insurance, Medicare, etc.) before admission. Patients whose admission is emergency or urgent (see footnote 4) are admitted without regard to financial considerations but are required to make arrangements as soon after admission as possible for payment of their hospital bill, if they are financially able to pay.[5]

3. This finding of fact is based upon the uncontradicted affidavits of Ronald E. Hoy, Vice-President of Finance, Forsyth Memorial Hospital, and Harold G. Koach, President of Forsyth Memorial Hospital. Although the minutes of the meeting of the Finance Committee of Forsyth held on July 2, 1973, reveal discussion relative to the possibility of counting free care rendered at the Family Health Center of Reynolds with the free care rendered at Forsyth, such practice was not initiated. By letter of July 27, 1973, from the North Carolina Department of Human Resources, such practice was prohibited (See Finding of Fact No. 28). All of the evidence is that such practice, though considered, was never carried out and, consequently, there is no basis upon which this fact may be disputed. Fed.R.Civ.P. 56(e).

4. William A. Lambeth, M.D., is vice-president for Medical Affairs at Forsyth Memorial Hospital and states by affidavit that the terms "emergency," "urgent," and "elective" care have the following meanings to the Medical-Dental Staff of Forsyth, although such definitions do not appear anywhere in writing:

(1) *Emergency care*—any situation in which immediate attention is required in order to prevent serious harm to the patient.

(2) *Urgent care*—any situation in which prompt, but not immediate, attention is required in order to prevent serious harm to the patient.

(3) *Elective care*—any situation in which a deferment in providing the care is not likely to cause serious harm to the patient.

5. The affidavit of Jerry A. Ritchie, Patient Accounts Manager of Forsyth Memorial Hospital, states that the prospective patient is informed in writing of the above-stated admission policy and that such policy has been in effect since September of 1969. The following are the *Policies for Making Reservations for Admission to Forsyth Memorial Hospital:*

*RESPONSIBILITY:* It will be the responsibility of the Admissions Manager of Forsyth Memorial Hospital to insure that the admission of patients to this hospital is in accordance with the Credit Policy of this hospital and other admission policies of the Hospital Administration.

*EMERGENCY ADMISSIONS:* Admissions of an emergency nature (including those patients placed on the surgical urgent list) will be accepted at any time without financial check. All emergency admissions will be stamped "Emergency Admission" on the first

sheet of the admission document by the admitting clerk at time of admission. Upon discharge, the medical Records Department will hold all patient charts of emergency admissions and place them in a designated area. It is the duty and responsibility of the Admissions Committee to review all emergency admissions to insure all are bona fide emergencies.

It will be the responsibility of the admitting physician to determine the type of admission, and to tell the admitting clerk, at the time the reservation is requested, whether the admission is of emergency, urgent, or elective nature. Under no circumstances will a member of the admitting department determine the type of admission.

Reservations for elective admissions will be handled in the following manner:

1. A preliminary reservation sheet will be used for taking reservations requests. All reservations taken during a 24 hour period will be listed on this form. The physician making the reservation will be requested to furnish all information necessary to complete the form at the time reservation is requested.

2. The first thing each morning, the Reservation Clerk will give the preliminary reservation sheet for the preceding day to the hospital Credit Analyst.

3. The Credit Analyst will check each patient on the preliminary reservation sheet to determine if there is an unpaid hospital account for which the person is responsible.

4. The Credit Analyst will make a notation by the name of each patient indicating the reservation is "acceptable" or "non-acceptable" for financial reasons.

5. The Credit Analyst will return the preliminary reservation sheet to the Reservation Clerk no later than noon each day.

6. The reservation for patients shown as "non-acceptable" by the Credit Analyst will be cancelled. The Reservation Clerk will notify the physician's office that requested the reservation, that the reservation has been cancelled for financial reasons. If it is a surgical patient, the Operating Room will be notified of the cancellation.

7. Reservations for patients shown as "acceptable" by the Credit Analyst will be added to the Reservation Book and a pre-admit form will be mailed to the patient.

8. All reservations cancelled for financial reasons and subsequently determined to be acceptable for admission will be rescheduled with the reservation clerk.

All patients admitted without making a deposit and without showing proof of third-party coverage are interviewed as soon after admission as possible, but only when their medical condition permits. If, during the interview, the patient's financial and family condition indicates that the patient is eligible for uncompensated care under Hill-Burton requirements, the patient is urged to apply for same. Whenever a patient's third-party coverage denies liability or leaves a substantial balance, contact with the patient is made and it is determined if the patient qualifies for Hill-Burton uncompensated care.

8. In the procedures cited in Finding of Fact No. 7, Forsyth normally postpones determination of a person's inability to pay until after the services are rendered and sometimes until after a bill has been sent and has remained unpaid, such procedure being in accordance with 42 C.F.R. § 53.111(f)(1).

9. Hill-Burton qualified patients are occasionally transferred from Forsyth to the 50-bed unit at Reynolds. The determination as to which patients are transferred is a decision made by the patient's doctor without the direct participation of the Hospital Authority, although it is the agency which grants staff privileges to the doctors who practice in its facility. Such transfer decisions are made by each individual doctor and are motivated by the doctor's requirement for bed space for his patients in one facility or the other. For instance, should a patient who is in Forsyth no longer require acute care and that bed space is needed for another patient in need of acute care, the doctor might transfer the non-acute care patient to Reynolds to acquire bed space at Forsyth. Such a procedure, however, requires that the patient be discharged from Forsyth and readmitted to Reynolds.

10. Because of the type of their illness, certain patients are treated at Reynolds as opposed to Forsyth due to a division of labor to achieve economy and efficiency between the two medical facilities. Although the ambulatory outpatient would likely receive treatment faster at the Family Health Center of Reynolds than he would at Forsyth for a non-emergency medical problem, the resources to treat all problems encountered at Reynolds are available, as time and space permit, at Forsyth.

11. On or about June 7, 1974, plaintiff Charlotte Mock Daniel was admitted to the GYN Division at Forsyth. Neither at the time of her admission nor at any subsequent time was plaintiff informed by defendants or their agents that she was eligible or ineligible for uncompensated care under the Act.

12. Subsequent to plaintiff Charlotte Mock Daniel's admission to the GYN Division at Forsyth, she was discharged by her physician on June 12, 1974, and thereafter on the same day without her knowledge, and on a petition of her daughter, she was admitted by court order to the Psychiatric Unit at Reynolds where she remained until June 27, 1974.

13. The medical care rendered to plaintiff Charlotte Mock Daniel at Reynolds was also available at Forsyth.

14. Defendant Koach as agent for the Hospital Authority caused to be mailed to plaintiff Charlotte Mock Daniel a form letter dated October 23, 1974, informing said plaintiff of her indebtedness to defendant Hospital Authority in the amount of $1,084.30; said letter was followed by several telephone calls from the office of the credit manager of Reynolds informing plaintiff that if action were not taken to pay the $1,084.30, the defendant Hospital Authority would have no recourse but to turn said account over to counsel for appropriate legal action. A typed letter was mailed by Rita N. Lemons of the Credit Manager's office to plaintiff Charlotte Mock Daniel on October 23, 1974, seeking payment of the amount claimed due, or in the alternative suggesting that credit arrangements be made as soon as possible.

15. Application was filed on behalf of Charlotte Mock Daniel for Medicaid payment upon her admission to Forsyth on July 12, 1974. The application was ap-

proved by the North Carolina Medicaid officials, and her bill was paid in full through Medicaid coverage. Consequently, all claims by the defendants against this plaintiff have been dismissed.

16. Claude Wilson Gordon was admitted to Reynolds on December 30, 1971; March 20, 1972; and September 5, 1972, respectively, for the treatment of Epilepticus and Ethanolism. At the time of the March 20 admission he represented to hospital officials that he was unemployed except for occasional part-time labor and had been unemployed for the preceding ten years.

17. Services rendered to plaintiff Claude Wilson Gordon on each of those occasions set forth above were available at both Forsyth and Reynolds.

18. The Hospital Authority did, on August 20, 1974, file suit against plaintiff Gordon in the District Court Division of the Twenty-First Judicial District of the State of North Carolina for hospital and medical services rendered plaintiff in the total amount of $3,691.75.

19. Otha Allen Daniel was admitted to Reynolds on July 6, 1973, having been escorted to the hospital by a law enforcement officer because of an "acute psychotic episode." The Hospital Authority's agent knew that plaintiff represented to hospital officials that he was unemployed and had no insurance to cover hospital expenses. The services rendered to him for the period of July 6, 1973, through July 12, 1973, at Reynolds were also available at Forsyth. Plaintiff had been previously admitted by his physician to Reynolds (12–30–71 and 9–5–72). His physician did not seek to have him admitted to Forsyth on July 6, 1973.

20. As a result of these events, the Hospital Authority did, on January 3, 1975, file suit against plaintiff Daniel for services rendered in the total amount of $388.63.

21. On or about July 4, 1974, Irene Setzer was admitted to Forsyth Hospital for the treatment of a severe laceration of the hand. She was not informed at any time by hospital authorities of the possible eligibility for uncompensated care.

22. Defendant Koach as agent for the Hospital Authority did, on or about August 21, 1974, cause the unpaid account of plaintiff Irene Setzer to be turned over to counsel for the Hospital Authority for the purpose of instituting legal action to collect on said unpaid account, and counsel did send a collection letter to Ms. Setzer on October 10, 1974.

23. On at least four separate occasions counsel for the Hospital Authority wrote to the plaintiff Irene Setzer informing her of her alleged indebtedness in the amount of $215.50 and stating that "this letter is your notice that we are now preparing suit papers demanding payment of the entire amount due, plus court costs and interest." The amount remains unpaid to date, and the exact status of Ms. Setzer has not been determined due, at least in part, to her providing the hospital with misleading, if not inaccurate, information and the fact she left the hospital without checking out with the cashier's office.

24. On or about July 25, 1973, Brenda Kay Hicks Fernandez was admitted to Forsyth for treatment of multiple injuries sustained in a motorcycle accident. Agents of the hospital knew from the forms Ms. Fernandez completed that she was unemployed and had no insurance. She remained in the hospital until October 14, 1973, and accumulated an account balance of $5,251.40.

25. On January 11, 1974, her $5,251.40 account was charged to the hospital's Hill-Burton Account, after she had been determined to be an eligible recipient. On January 14, 1974, Ms. Fernandez was readmitted for treatment of old injuries sustained in the same accident and was discharged on March 15, 1974, having accumulated an additional bill of $3,440.25. She was again determined eligible for Hill-Burton free care, and the entire amount was charged to the hospital's Hill-Burton Account.

26. On September 11, 1974, the Hospital Authority filed suit against Ms. Fernandez for $8,691.65 (total of the two

hospital bills hereinabove-mentioned) and deleted from its Hill-Burton account that same amount which it had previously written off. On December 17, 1974, Ms. Fernandez filed suit in state court against alleged tort-feasors for damages sustained in the motorcycle accident, including medical expenses. On December 27, 1974, the Hospital Authority filed a lien against any recovery by Ms. Fernandez in the pending lawsuit.

27. The state agency charged with the administration and enforcement of the Regulations promulgated under the Hill-Burton Act is the North Carolina Department of Human Resources. That Department determined that the Hill-Burton Act does not apply to Reynolds since no Hill-Burton funds were used in the construction or renovation of that hospital. The records of the Department show compliance with the applicable regulations in 1973–1974 by Forsyth, and the Secretary of the Department of Health, Education, and Welfare was so notified. Furthermore, the records of the Department do not show any complaints having been received contending that Forsyth did not comply with the Hill-Burton Act.

28. The North Carolina Department of Human Resources has advised officials of Forsyth that "two hospitals (one receiving Hill-Burton funds and one not) cannot be combined for the purpose of meeting the uncompensated care provision, even though operated under a common governing body."

## DISCUSSION

This case presents a myriad of legal questions concerning the Hill-Burton Act, 42 U.S.C. § 291 et seq., and its application to hospitals receiving Hill-Burton funds. The plaintiffs seek to maintain a class action under Rule 23, Federal Rules of Civil Procedure, and pray for injunctive and declaratory relief against certain practices and policies of the Hospital Authority relating to the administration of the Hill-Burton uncompensated care program.

## I. The Class Action

### A. Definition

■ At the outset it is appropriate to address the class action request made by the plaintiffs. The facts of this case present the typical legal scenario for the maintenance of a class action under Rule 23(a), (b)(2), Federal Rules of Civil Procedure. The Court defines the class as all consumers of health care services who have been or will be entitled to free or reduced cost hospital care at Forsyth Hospital under the statutory and regulatory provisions of the Hill-Burton Act.

■ The requirement of numerosity under Rule 23 is certainly satisfied although the group of included persons is not determinable as to exact number. The gathering of such a number of persons for inclusion in the lawsuit as individual parties is impractical and those who have allegedly been injured are in a poor position to seek legal redress, either because they are ill-informed or because such relief is disproportionately expensive. *Dolgow v. Anderson,* 43 F.R.D. 472 (E.D.N.Y.1968). No specified number of members of the class is needed to maintain a class action. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648 (4th Cir. 1967).

■ Although it is conceded by the plaintiffs that the specific factual backgrounds of the representative individual plaintiffs are not identical, counsel for the plaintiffs persuasively argue that the defendants' administration of the Hill-Burton program presents a question of law common to the class. Whether Reynolds must offer uncompensated care, whether Forsyth must make a determination as to patient eligibility and notify patients of such determination at or prior to admission, and whether the refusal to offer uncompensated care at Reynolds while offering such care at Forsyth are examples of some of the legal issues raised in this action which are common to the class the plaintiffs seek to represent. In short, commonality is satisfied where the question of law link-

ing the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated. *See American Finance System Incorporated v. Harlow,* 65 F.R.D. 94, 107 (D.Md.1974); *Like v. Carter,* 448 F.2d 798, 802 (8th Cir. 1971), *cert. denied,* 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972).

Based on the above-stated conclusion, it follows that the claims of the representative parties are typical of the claims of the class, and there does not appear to be any antagonism or conflict of interest within the overall group of plaintiffs which would compel a different class configuration in order to adequately protect the rights of all the class members. The claims of the purported class members trot in double harness, and the individual class representatives and their counsel have demonstrated they will vigorously advocate the personal interests of the class members. *See American Finance System Incorporated v. Harlow, supra.*

Finally, the Hospital Authority has allegedly acted or has refused to act on grounds generally applicable to the class, thereby making appropriate limited injunctive and declaratory relief to the class as a whole. *See Hammond v. Powell,* 462 F.2d 1053 (4th Cir. 1972); 3B Moore, Federal Practice § 23.55. It is concluded that the plaintiffs have met all of the prerequisites of Rule 23(a) and (b)(2) and that this action will proceed as a class action as the class has been defined hereinabove.

B. *Motion of Brenda Kay Hicks Fernandez to Intervene as a Plaintiff*

Some five months after this action was commenced, Brenda Kay Hicks Fernandez sought to intervene as an additional party plaintiff asserting the defendants' actions, detailed in Findings of Fact Nos. 24–26, had deprived her of uncompensated care benefits to which she claimed entitlement under the Hill-Burton Act. To the extent Ms. Fernandez is a member of the class as previously defined, she will be permitted to inter-

vene pursuant to the provisions of Rule 24(a)(2), Federal Rules of Civil Procedure.

However, the intervenor's complaint introduces a completely new claim into this action. As stated in the Findings of Fact, Ms. Fernandez has instituted a separate state court action against various alleged tort-feasors who proximately caused the injuries which required her hospitalization. Such suit was instituted *after* she was determined to be a Hill-Burton eligible patient and after she was provided with substantial free medical care. The prayer for relief in the state court action included an amount demanded by Ms. Fernandez for compensation for medical services rendered. Forsyth's accounting department canceled its previous write-off of Ms. Fernandez's bill, deducted the corresponding credit it had made to the Hill-Burton Account and filed a lien against any recovery obtained by Ms. Fernandez in the amount of the medical services rendered, in accordance with N.C.G.S. § 44–49.

The intervenor seeks to have the state lien declared invalid. The facts which the intervenor presents regarding the validity of the lien are collateral to the central issues presented by the class action. Ms. Fernandez's claim in this regard is unique and not common or typical to the claims and defenses of the class as a whole. The disposition of the central issues of this case would not in anyway affect the right of Ms. Fernandez to pursue her claim of invalidity of the lien in another proceeding. Consequently, the Court regards the motion to intervene as one for permissive intervention under Rule 24(b)(2), Federal Rules of Civil Procedure.

Although the issue of the lien asserted by the defendants against the intervenor is collateral and not a part of the questions posed by the class action, the Court is familiar with the circumstances, and, therefore, deems it proper to allow the intervention of Ms. Fernandez's claim and dispose of the issue to save future litigation and expense.

At the heart of the intervenor's argument that the lien should not be permitted to stand is the fact that both the Regulations issued by the Department of Health, Education, and Welfare, 42 C.F.R. § 53.111,[6] and the written procedure adopted by Forsyth to comply with the Hill-Burton Regulations,[7] prohibit collection efforts made toward patients who have been determined to be eligible for free medical care.

Although the Regulations make provision for amounts to be received in the future from a third-party insurer or under a governmental program,[8] there seems to be no provision made for the hospital's reimbursement from the eligible patient where the patient, after receiving free medical services, recovers in a legal action from a tort-feasor who caused the injuries requiring his hospitalization.[8a]

Under this Country's system of civil justice, a person may not receive compensation for damages which he has not suffered. It would be unconscionable to permit the taxpayers to bear the expense of providing free medical care to a person and then allow that person to recover damages for medical services from a tort-feasor and pocket the windfall.

Recognizing the obvious problem, North Carolina has enacted N.C.G.S. § 44–49, which provides for the creation of a lien upon recovery of damages for personal injuries to secure the sum due for medical attention. Such lien attaches to the recovery, if any, and is not a general lien against the assets of the alleged debtor. *See Travelers Insurance Company v. Keith,* 283 N.C. 577, 196 S.E.2d 731 (1973). This statute provides a practicable means by which a hospital can recover an amount due for services rendered when there is a possibility of recovery by the patient from a third-party tort-feasor.

It is difficult to reconcile 42 C.F.R. § 53.111(f)(1) and the plan regarding collection adopted by Forsyth with the provisions of N.C.G.S. § 44–49. If the determination of eligibility must be made before any collection effort is made (see footnote 6), and if no collection effort may be made after the determination of eligibility (see footnotes 6 and 7), then there is no way that the Hill-Burton hospital can make use of the provisions of N.C.G.S. § 44–49 to secure reimbursement and thus prevent the unjust enrichment of the patient to the detriment of the taxpayer.

Although not specifically provided in the language of 42 C.F.R. § 53.-111(f)(2)(i) or (ii), it is the opinion of the Court that this exception encompasses in its intent the right of a Hill-Burton hospital to file a lien under the provisions of N.C.G.S. § 44–49 to secure payment for services rendered an eligible patient in the event of later recovery for personal injuries by the patient from a tort-feasor. Therefore, the intervenor's complaint seeking a declaration that the lien filed by the defendant is invalid is denied.

---

**6.** 42 C.F.R. § 53.111(f)(1) states

In determining the amount of uncompensated services provided by an applicant, there shall be included only those services provided to an individual with respect to whom the applicant has made a written determination *prior to any collection effort* other than the rendition of bills that such individual is unable to pay therefor under the criteria established pursuant to paragraph (g) of this section except that such collection efforts may be made against a third party insurer or against a governmental program. (Emphasis added).

**7.** Forsyth Memorial Hospital Procedure for Complying with Hill-Burton Regulations states:

Eligible Accounts:
Any account determined to be Hill-Burton Eligible should be marked on the front lower corner *Hill-Burton Eligible.* Form 2 should be placed inside and the tickler card marked and dated. *No collection effort can be made toward this patient.*

**8.** *See* 42 C.F.R. § 53.111(f)(2)(i) and (ii) (1974).

**8a.** Ms. Fernandez' state court suit against the third-party tort-feasor has been compromised and settled, but her state court attorney has refused to accept the insurance carrier's settlement check because Forsyth was, due to its lien, one of the payees named therein.

## II. *The Motions for Summary Judgment*

### A. *Reynolds Memorial Hospital*

■ The defendants have moved for partial summary judgment dismissing Reynolds from this action on the basis that it is not and has never been an "applicant" or recipient of Hill-Burton funds and, therefore, has no responsibility to provide free or reduced-cost medical care under the provisions of the Hill-Burton Act.

The term "applicant" is defined by 42 C.F.R. § 53.111(b)(2) to mean "applicant for, or recipient of a grant, a loan guarantee or a loan under the Act." The evidence in this case is conclusive that Reynolds was built without the aid of Hill-Burton funds, and it has not received Hill-Burton funds for any other purpose. This simple fact is determinative of the action as it relates to Reynolds, and the motion of the defendants for partial summary judgment dismissing Reynolds will be granted.

Before leaving this issue, some additional comments are in order. The plaintiffs maintain that the Hospital Authority was the municipal unit which made application for Hill-Burton funds and, therefore, the facilities under the managerial control of the Hospital Authority should be charged with the Hill-Burton obligation regardless of the specific facility to which the federally obtained funds were applied. This view assumes Reynolds and Forsyth are divisions of the *same* general health care facility and obligates the defendants to provide uncompensated care at both its Reynolds and Forsyth "divisions." The plaintiffs seek to buttress the argument by attempting to show a symbiotic relationship between the divisions indicating ambulatory patient care and psychiatric care are primary functions at Reynolds, while Forsyth offers acute care to non-ambulatory patients. Essentially, the proposed line of demarcation is that Forsyth offers short-term acute medical care, while Reynolds is a long-term health care facility.

As the Court stated in its earlier denial of a temporary restraining order in this case (entered June 17, 1975), affidavits in the record state that the same general medical services available at Reynolds are available at Forsyth, although there has been a differentiation of patient care for economy and practicality. However, the quintessential fact is that Forsyth is able to offer to qualified Hill-Burton patients a full range of medical services. (See Finding of Fact No. 3).

Furthermore, Reynolds and Forsyth are separate and distinct hospital units. (See Findings of Fact Nos. 4, 5, and 6). Reynolds has not provided patients Hill-Burton care, and there is no evidence that uncollectible debts incurred at Reynolds have been charged off by Forsyth in order to meet its Hill-Burton obligation. Given the plaintiffs' position that Reynolds and Forsyth are divisions of the same health care facility and the factual setting of this case, the issue presented is remarkably similar to that confronted in *Corum v. Beth Israel Medical Center,* 359 F.Supp. 909 (S.D.N.Y.1973), on a motion to reargue. In that case, Hill-Burton funds were granted for the reconstruction and modernization of a rehabilitation center. The defendants asserted that only the funded portion of the facility was required to provide free services. The plaintiffs' position was that funding of one portion of the facility necessarily mandated that free care be provided throughout the hospital complex.

The Court recognized the explicit language of the Hill-Burton Act[9] and the implementing Regulations[10] and dis-

---

9. 42 U.S.C. § 291c(e)(2) states that "there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor, but an exception shall be made if such a requirement is not feasible from a financial viewpoint."

10. 42 C.F.R. § 53.111(c)(1) states, in part, that "[b]efore an application under this part is recommended by a State agency to the Secretary for approval, the State agency shall obtain an assurance from the applicant that there will be made available in the facility or portion thereof to be constructed or modernized a reasona-

cussed the significance of the phrase "facility or portion thereof," refusing to take the extreme position of either of the parties. The court noted that if uncompensated services were required to be given by the entire hospital complex when the Hill-Burton funds were used only to build, for example, a nurses' residence, such requirement would place an extreme and unjustified burden on the hospital. The court also found that if only nursing services were provided, there would be a glaring contradiction in the compliance with the Statute and Regulation requiring "a reasonable volume of services to persons unable to pay therefor." (See footnotes 9 and 10, *supra*). The court noted that "[t]he stated purpose of the Act is not merely to enable hospitals to provide emergency services, but 'to furnish adequate hospital, clinic, or similar services' (42 U.S.C. § 291), which terms, we believe, encompass the whole range of hospital services." *Corum v. Beth Israel Medical Center, supra,* at 917.

■ It was simply not reasonable, the court further concluded, to overlook the phrase "or portion thereof" which clearly indicated that the agencies need not require services to be provided throughout the entire facility. A recipient of Hill-Burton funds is required by the statute to provide such services in such portion or portions of its facility as will constitute a reasonable volume of medical care in light of the requirements of the community and the amount of the grant.

■ In the case now before this Court, it has been concluded that Forsyth can offer a full range of medical services to qualified persons and that the services offered at Reynolds are not unique to that facility. Limiting the obligation imposed by the Hill-Burton Act to For-

syth—the only hospital which received funding—would not constitute an unreasonable curtailment of medical services offered in the Forsyth County community. Such interpretation, requiring that only Forsyth be charged with the responsibility of providing free or reduced cost medical care, is the logical way in which the phrase "facility or portion thereof" can be given meaning in this case. Consequently, the defendants' motion for partial summary judgment dismissing Reynolds from this action will be granted.

**B.** *Providing Uncompensated Care to Individual Plaintiffs at Forsyth Hospital*

The individual representative plaintiffs seek to have this Court find that each of them individually has been deprived of uncompensated medical care by Forsyth to which each claims entitlement by virtue of qualification under the provisions of the Hill-Burton Act. Although the Regulation providing for the evaluation and enforcement of the plan submitted by an applicant hospital and accepted and administered by the State [42 C.F.R. § 53.111(i) (1974)] was unclear as to what, if any, standing [11] to litigate an individual patient might have who claimed the hospital improperly refused to grant uncompensated care, such lack of clarity no longer exists. On January 4, 1975, Congress enacted the "National Health Planning and Resources Development Act of 1974," 42 U.S.C. § 300p–2(c), Section 1612, Pub.L. 93–641, 88 Stat. 2263, which provides in part:

> An appropriate action to effectuate compliance with any such assurance [that the adopted plan is being carried out] may be brought by a person other than the Secretary only if a complaint has been filed by such person with the

ble volume of services to persons unable to pay therefor."

11. Cases which hold that individual plaintiffs have standing to litigate alleged violations of the Hill-Burton Act are *Corum v. Beth Israel Medical Center,* 359 F.Supp. 909 (S.D.N.Y. 1973); *Euresti v. Stenner,* 458 F.2d 1115 (10th Cir. 1972); *Organized Mig. in Com. Act. v.*

*James Archer Smith Hosp.,* 325 F.Supp. 268 (S.D.Fla.1971); *Cook v. Ochsner Foundation Hospital,* 319 F.Supp. 603 (E.D.La.1970). Cases which have held to the contrary are *Stanturf v. Sipes,* 224 F.Supp. 883 (W.D.Mo. 1963); *Don v. Okmulgee Memorial Hospital,* 443 F.2d 234 (10th Cir. 1971).

Secretary and the Secretary has dismissed such complaint or the Attorney General has not brought a civil action for compliance with such assurance within 6 months after the date on which the complaint was filed with the Secretary.

 Therefore, individuals who seek compliance with an adopted Hill-Burton plan by a medical facility must pursue the course provided by Congress and first exhaust the administrative remedy provided by the statute. Any other resolution of this action, which would require the federal court to inquire into the unscreened, specific factual background of every individual plaintiff to determine if that person were eligible for Hill-Burton care and were denied such care improperly, would place an intolerable burden on the court system and one for which it is ill-prepared. Federal courts cannot police the day-to-day administrative decisions of Hill-Burton hospital officials, and Congress has, by enacting the above-mentioned statute, implicitly recognized that judicial manpower is insufficient to have a federal judge in every Hill-Burton hospital. For the reasons stated above and inasmuch as the plaintiffs have not exhausted their administrative remedy, the plaintiffs' motion for summary judgment as to a declaration of individual entitlement *vel non* is denied at this time.

C. *Standards for Dispensing Medical Care Under the Hill-Burton Act*

 As to the determination of the amount, type, and priority of dispensing of medical care to admittedly qualified Hill-Burton patients, the Court is faced

not with a question of determining an individual's qualification to receive uncompensated care, but rather the propriety of standards and rules which the hospital has adopted and the state agency has approved to administer the required limited amount of free care to qualified patients under the Act.[12] The plaintiffs claim that Hill-Burton care should be provided on a first-come, first-serve basis and that anyone qualifying as unable to pay and whose treatment is "medically necessary" should receive treatment. The defendants contend that eligible patients should be categorized into emergency, urgent, and elective status and treated according to the medical severity throughout the fiscal year so that those in the greatest need are assured of receiving treatment before the funds are depleted. (See Finding of Fact No. 7 and footnote 5).

Although this Court believes that the latter course of action is a more logical and rational basis on which to equitably distribute the limited amount of care available among qualified recipients, this question presents the classical situation in which primary jurisdiction rests with the appropriate state and federal agencies charged with the responsibility of administration of the program. *See Great Northern R. Co. v. Merchants Elevator Co.,* 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922). Since the state and federal agencies are charged with the implementation of a plan under which the program operates and are also charged with the evaluation and enforcement of the plan, it is proper that such agencies be presented, in the first instance,[13] with the challenge to the cur-

12. 42 U.S.C. § 291c(e)(2) requires that "a reasonable volume of services [be provided] to persons unable to pay therefor." A reasonable volume of services has been determined by the presumptive compliance guidelines of the Federal Regulations (42 C.F.R. § 53.111(d)) requiring the hospital to provide uncompensated care in a value of at least three percent of its operating costs. (See Finding of Fact No. 6).

13. "The purpose of the doctrine of primary jurisdiction is not to divide powers between courts and agencies but to determine which tribunal should take initial action. . . . The reason for the doctrine is not a belief that an agency's expertise makes it superior to a

court; the reason is that a court confronted with problems within an agency's area of specialization should have the advantage of whatever contributions the agency can make to the solutions." 3 Davis, Adm. Law Treatise, § 19.-09, at 53 (1958). Primary jurisdiction is not a doctrine which governs judicial review of administrative action. "In this important respect, it is altogether different from the doctrines of exhaustion and of ripeness, which govern the timing of judicial review of administrative action. The doctrine of primary jurisdiction determines whether the court or the agency should make the initial decision." 3 Davis, *supra,* at 2.

rent practice as to distribution of amount and type of services.

Plaintiffs cite *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), and argue that their alleged inability to trigger the agency decision-making process makes the exercise of primary jurisdiction improper in this case as it was in *Rosado.* In *Corum v. Beth Israel Medical Center,* 373 F.Supp. 550 (S.D.N.Y.1974), an identical argument was presented. The district court, facing a challenge as to who should determine the amount and type of services required under the Hill-Burton Regulations, distinguished *Rosado* based upon the fact that individual plaintiffs may participate to some degree in the mandatory agency review of the level of services offered by the hospital. *See* 42 C.F.R. § 53.111(h).

Furthermore, the state plan submitted by the state agency for approval by the Secretary of Health, Education, and Welfare is closely regulated, and the criteria is available for public inspection on demand. 43 C.F.R. § 53.111(g). Since annual review of the hospital services is mandated by the applicable regulations, objections to the plan or any implementing rules or standards should be addressed to the state agency in the first instance for remedial action if such is warranted. Furthermore, the method of triggering review of policy decisions, absent in *Rosado,* is present in the instant case. *See* 42 U.S.C. § 300p–2(c). After a determination by the agency, if the problem has not been resolved, and if such problem presents a justiciable issue under the Act, Regulations, or the Constitution, the federal court will render a decision.

D. *Notification and Determination of Eligibility of Patients Pursuant to the Act*

The plaintiffs seek declaratory relief from the provisions of 42 C.F.R. § 53.-111(f)(1), which provides:

In determining the amount of uncompensated services provided by an applicant, there shall be included only those services provided to an individual with respect to whom the applicant has made a written determination prior to any collection effort other than the rendition of bills that such individual is unable to pay therefor under the criteria established pursuant to paragraph (g) of this section except that such collection efforts may be made against a third party insurer or against a governmental program.

Pursuant to this section, which implements the phrase "persons unable to pay" found in 42 U.S.C. § 291c(e), Forsyth normally postpones determination of a person's inability to pay until after the services are rendered and sometimes until after a bill has been sent and has remained unpaid. The plaintiffs argue that this practice and the above-cited Regulation are inconsistent and antithetical to the ends specified in the Act and thus the Regulation must be disregarded as invalid.

Of course, regulations promulgated by officers or agencies charged with the administration of statutory law are to be accorded great deference by the courts, but they cannot stand if they are erroneous or inconsistent with statutory law. *See Bingler v. Johnson,* 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969); *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Power Reactor Develop. Co. v. Electrical Union,* 367 U.S. 396, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961).

The Regulation attacked by the plaintiffs in the present suit was also attacked in the *Corum* case. The district court observed that if the hospital is not obliged to make a determination of eligibility prior to the rendering of services, many persons may incur liabilities in the hope of receiving Hill-Burton assistance and may be hard-pressed to pay if such determination is not in their favor. Furthermore, such uncertainty may dissuade many eligible persons from receiving any medical care at all. The *Corum* court noted that it was understandable that hospitals might wish to count toward its Hill-Burton requirement services ren-

dered for which collection proves difficult, but the purpose of the Act is not to provide such a benefit for Hill-Burton hospitals. The Court concluded that 42 C.F.R. § 53.111(f)(1) was antithetical to the provisions of 42 U.S.C. § 291c(e) and stated

Accordingly, a determination of genuine inability to pay, in terms of financial resources and income and not merely of refusal to pay the bill, must precede a decision to use the services rendered or to be rendered in satisfaction of the Hill-Burton requirement. In view of the strong interest of plaintiffs in a preadmission determination of inability to pay, and in the absence of any valid reason for postponement of the decision, we hold that it must be made before rendition of services and that the present provision is invalid.

*Corum v. Beth Israel Medical Center,* 373 F.Supp. 550, 557–58 (S.D.N.Y.1974).

The only reason assigned by the defendants in this case for opposing determination of eligibility prior to the rendition of service was that such practice would be time-consuming, inconvenient, and expensive. When such a determination must be made at *some* time, the Court fails to see the weight of these arguments. If any such hardship exists by requiring early determination, it can best be borne by the hospital rather than eligible patients. Such policy will also likely result in fewer persons receiving benefits who are not qualified under the Hill-Burton Act, since the temptation for the hospital to simply charge off uncollectible debts no longer exists.

■ This Court is in full agreement with the opinions expressed and the re-

sult reached in *Corum, supra,* as to the invalidity of 42 C.F.R. § 53.111(f)(1) and, therefore, the plaintiffs' motion for summary judgment seeking declaratory relief invalidating that part of the Regulation is granted. The defendants will henceforth include amounts to satisfy its Hill-Burton requirement for only those services provided to an individual with respect to whom the defendants have made a written determination prior to the provision of such service that such individual is unable to pay therefor under the criteria established pursuant to 42 C.F.R. § 53.111(g), except that (1) such determinations may be made after the provision of such service but prior to the rendition of a bill where the applicant has for good cause been unable to complete its investigation and determination prior to the provision of the services: *Provided that* a statement of such good cause shall be made a part of the applicant's written determination; and (2) such determination may be made after the provision of such service and after the rendition of a bill, but prior to any effort to collect such bill, in the case of services provided in emergency departments of general hospitals or where there has been a change in circumstances, e. g., the patient's financial condition has changed, his insurance coverage is less than anticipated, or the cost of the services provided is greater than anticipated.[14]

The plaintiffs further assert that the class they represent is entitled to some form of notification at the hospital site as to the availability of Hill-Burton care. They further claim that doctors at Reynolds must notify patients prior to their admission to that facility of the uncompensated medical care available to qualified persons at Forsyth.

14. It is to be *particularly* noted that this order corresponds exactly to the interim order issued by the Department of Health, Education, and Welfare on September 5, 1974, in response to the decision in the *Corum* case. The Court is advised that a proposed change in the Code of Federal Regulations is currently under consideration and has been published by the Secretary for public comment in the *Federal Register,* Vol. 40, No. 46, March 7, 1975. Such

proposed Regulation would amend 42 C.F.R. § 53.111(f)(1) and would adhere to the provisions of the interim order of September 5, 1974.

Of course, when a revised regulation covering 42 C.F.R. § 53.111(f)(1) is approved and issued, the defendants will abide by the new Regulation.

■ Since Reynolds is not charged with any Hill-Burton responsibility, the claim that hospital officials be required to notify patients before admission to that facility of Forsyth's program is without foundation; this Court having no jurisdictional basis on which to order such relief. Accordingly, the plaintiffs' motion to require Reynolds to post notice of Forsyth's free care obligation is denied.

As to the notice sought to be required by Forsyth, notice of a right to an intended beneficiary is a concomitant responsibility in order to effectuate bestowal of the right. Cf. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The Code of Federal Regulations provides that the state agency shall publish notice in a newspaper of general circulation within the community served by the hospital of the establishment of an amount of uncompensated care to be provided by the hospital. 42 C.F.R. § 53.111(h)(4). Furthermore, the Regulations require the state agency and the medical facility to provide a copy of the criteria for identifying persons unable to pay for services to any person requesting it. 42 C.F.R. § 53.111(g)(2) and (3).

Although there is certainly no requirement that all members of the public have *actual* notice of the benefits available under the Hill-Burton Act, it is obvious that a simple written notice displayed in appropriate areas within the Hill-Burton facility would be an effective and satisfactory means of informing the public of the availability of the program. Such notice would be far more effective in communicating information to needy and qualified persons than the annual notice printed in the legal notice section of one local newspaper. Posting of such notice is contemplated by a proposed amendment to the Regulations issued by the Secretary of Health, Education, and Welfare pursuant to the Hill-Burton Act.

(i) *Posted notice.* The applicant shall post notice (which shall be multilingual where the applicant serves a multilingual community), in substantially the following form, in appropriate areas within the facility (admissions, office, emergency department and business office) for the purpose of informing patients or potential patients that criteria for eligibility and applications are available upon request:

Notice of Hill-Burton Obligation

Under the Hill-Burton program, this hospital is obligated to render a reasonable volume of services at no cost or less than full charges to persons meeting eligibility criteria. Should you believe you may be eligible [because you are unable to pay] for such services, you should contact our business office (or designated person or other office). If you are dissatisfied with the determination in your case you may contact the State Hill-Burton agency (supply address) [and the U. S. Department of Health, Education, and Welfare (supply address)]. (Additions of the Court in brackets).

*Federal Register,* Vol. 40, No. 46, March 7, 1975.

■ Inasmuch as the above-quoted notice requirement is most helpful in informing the public of the services available at Forsyth and since such notice is necessary, as a practical matter, to the implementation of the purpose and goal of the Hill-Burton Act in making available a reasonable volume of medical services to persons unable to pay therefor, the defendants will post such notices in accordance with the format proposed in the Regulation appearing above.[15]

In addition to the information obtained in the "Notice of Hill-Burton Obligation" supplying dissatisfied persons with the State Hill-Burton agency address, reference should also be made to the recourse provided in 42 U.S.C. § 300p–2(c) to the United States Department of

---

15. When 42 C.F.R. § 53.111 is revised to add some notice provision similar to that now required of Forsyth by this order, the defendants will abide by the new Regulation.

Health, Education, and Welfare and the address of such agency supplied by the Notice.

### E. The Transfer of Eligible Patients from Forsyth to Reynolds

■ As stated in Finding of Fact No. 9, patients who have been admitted to Forsyth and determined to be Hill-Burton eligible are occasionally transferred [16] to Reynolds, where they no longer receive Hill-Burton free care.[17] These moves are necessitated by demands for bed space and are ordered by individual doctors according to the needs of each doctor's patient for acute care treatment. There are no written or definable guidelines by which a doctor makes the decision as to which of his patients are transferred to Reynolds and which remain at Forsyth. Consequently, the situation arises where a Hill-Burton eligible patient at Forsyth is moved by his doctor to Reynolds, where he no longer receives Hill-Burton free care.

The plaintiffs claim that the Hospital Authority has permitted doctors, under its auspices, to make such decisions regarding patient assignment, and has thus created two classes of patients who have been admitted to Forsyth and are eligible for Hill-Burton uncompensated care. The first class consists of those patients who are provided uncompensated care at Forsyth. The second class consists of those eligible patients who are transferred from Forsyth to Reynolds and refused further uncompensated care under the Hill-Burton Act. Of course, the interest sought to be protected by the second class of persons is in assuring that the defendants meet their obligation under the Act to provide a reasonable volume of uncompensated care to persons who are unable to pay therefor.

There is no question that the program of Hill-Burton funding of Forsyth has imbued the acts complained of in this suit with state action, *Simkins v. Moses H. Cone Memorial Hospital,* 323 F.2d 959 (4th Cir. 1963), *cert. denied,* 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964), and it is proper for the plaintiffs to bring an action pursuant to 42 U.S.C. § 1983 based upon the grounds that they have been denied equal protection under the law guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States. The Supreme Court set forth the applicable standards regarding such a claim in *Reynolds v. Sims,* 377 U.S. 533, 565, 84 S.Ct. 1362, 1383, 12 L.Ed.2d 506, 529 (1964).

[T]he concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged.

In this case the classification in question is not based upon a suspect criteria [18] but the interest of the plaintiffs' class is based upon the traditional equal protection analysis which is that a classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *See Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

Of course, if Reynolds were providing Hill-Burton care, the question of equal protection presented by the plaintiffs

---

**16.** The defendants argue that patients are not transferred but are discharged and readmitted from Forsyth to Reynolds. Regardless of how it is labeled, the end result is that a patient formally admitted to Forsyth is moved to Reynolds.

**17.** Although Hill-Burton care is not offered at Reynolds, the Court takes judicial notice that

Forsyth County provides medical care for qualified indigents at Reynolds, such program being supported by the local tax base.

**18.** For a discussion of suspect criteria in cases involving claims of equal protection, *see Frontiero v. Richardson, infra.*

would not arise because even if patients were transferred, they would still receive free care. However, Reynolds is not charged with any Hill-Burton obligation and, therefore, the transfer of some Hill-Burton eligible patients to Reynolds, absent a showing of a reasonable and rational basis of differentiation which is applied equally and fairly, would arbitrarily deprive those patients transferred to Reynolds of benefits to which they were entitled at Forsyth and which benefits are provided to otherwise similarly-situated patients who remain at Forsyth. The evidence before the Court is that the transfer of a patient is largely a matter of luck depending upon the patient load and the bed space requirements of the doctor who is attending the patient in question. The defendants have not promulgated any guidelines by which the individual doctor makes the decision as to which Hill-Burton eligible patients must transfer to Reynolds and which may remain at Forsyth. Needless to say, the patients are not informed as to the criteria by which their receipt of free medical service can be terminated by transfer from Forsyth to Reynolds.

Such unbridled discretion in the individual doctor is not a permissible delegation of authority by the defendants, and the same uncertainty is introduced into the offering of Hill-Burton care by the uncontrolled transfer of patients as was disapproved in the previous discussion concerning the determination of eligibility after the rendition of services. In both instances, the patient was likely to be required to make decisions without knowing the consequences of his action. For example, a patient could be determined Hill-Burton eligible and receive some free medical care and then be transferred to Reynolds before his release, and thus incur substantial liability although Hill-Burton eligible.

At the same time the Court realizes the difficulty in formulating guidelines that are practicable and workable by which doctors can make decisions as to who may be transferred and who cannot. It is certainly not required that every

Hill-Burton patient be retained at Forsyth until completely cured of all ailments. The constitutional requirement of equal protection is not a demand that everyone be treated equally, but rather that the classifications drawn be reasonable in the light of purposes of the Act. *Cf. Thompson v. Whitley,* 344 F.Supp. 480 (E.D.N.C.1972). Although it is recognized that such guidelines must be somewhat broad in order to be workable, the defendants will formulate a written policy governing the transfer of Hill-Burton eligible patients from Forsyth to Reynolds and submit it to the Department of Human Resources of the State of North Carolina and to the United States Department of Health, Education, and Welfare for their comment and approval. Such guidelines must be reasonable and bear a rational relationship to the purposes of the Act. The defendants will submit the guidelines, together with the comments and approval or disapproval of the appropriate agencies, to the Court within ninety (90) days of the date of this order. If necessary, and upon a showing of good cause, an additional period of time will be considered.

The guidelines, once approved, will be supplied to every doctor responsible for the care of Hill-Burton patients at Forsyth with instructions that the same be made available by him to any Hill-Burton patient he proposes to transfer (or discharge for the purpose of a new admission) to a non-Hill-Burton facility prior to his taking such action.

### III. *Motions to Strike and Amend*

The defendants filed a motion to strike the affidavit of James C. Gulick claiming that such affidavit was not factual but conclusory in nature and further asserting that, as counsel of record for the plaintiffs, it was improper for Mr. Gulick to offer evidence as to contested facts. Mr. Gulick and counsel for defendants promptly met and the disputed facts raised in Mr. Gulick's affidavit were resolved by stipulation. Since the remainder of the affidavit relates to record evidence about which there is no

dispute, the motion to strike the affidavit is denied.

Likewise, the motion of the plaintiffs to strike the affidavit of Jerry. A. Ritchie, Patient Accounts Manager of Forsyth Memorial Hospital, is denied inasmuch as the affidavit relates to factual evidence and is relevant and material.

■ The plaintiffs have also moved to join the Forsyth County Board of Commissioners as additional defendants. The grounds for such motion are that the Board, on or about July 1, 1975, assumed control of the operation of Reynolds. (See Finding of Fact No. 2). Had it been determined that relief was proper against Reynolds, the Board of Commissioners would certainly have been made party defendants. However, in view of the inappropriateness of any relief against Reynolds, the Board has no connection with the action, and the plaintiffs' motion is denied.

The plaintiffs also seek to amend their complaint to (1) include an assertion that the plaintiffs, by virtue of being eligible for uncompensated care, are not indebted to the defendants, and (2) to require the defendants to notify the Clerk of Superior Court of Forsyth County that all persons involuntarily committed for the treatment of mental illness and who qualify for free care pursuant to the provisions of the Hill-Burton Act should be committed to (a) Forsyth Memorial Hospital, (b) any other Hill-Burton funded facility, or (c) any state funded institution which provides for free care to those unable to pay.

Rule 15(b), Federal Rules of Civil Procedure, provides for the amendment of pleadings to conform to the evidence and is to be done freely when the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would cause him prejudice. The defendants have responded that they do not object to the plaintiffs being allowed to amend the complaint but the defendants deny the propriety of the relief sought based on such amendments.

■ Without objection, the amendments will be allowed although relief is denied. Extensive discussion has already been made relative to the plaintiffs' individual claims of entitlement to free medical care. Each must exhaust his administrative remedies before bringing an action in this court. As to the second amendment of the complaint, the Court agrees that the defendants have no authority to direct the Clerk of Court as to how he is to make the determination as to where to commit persons who are mentally ill under the North Carolina statutes,[19] and the Court declines to direct him to do so. Additionally, this action does not provide the proper forum to raise the issue presented by the amendment seeking to require that indigents be placed in a Hill-Burton or state-funded facility. All of the parties necessary for such adjudication are not before the Court, and the full facts surrounding the criteria for determination of hospital assignment used by the Clerk's office have not been developed. Neither does it present the proper procedural or factual background upon which the Court can make a decision, if indeed a legitimate issue exists, and, therefore, the relief requested by the plaintiffs as to this issue is denied.

### Conclusions of Law

1. The Court has jurisdiction of this action based upon 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 1983 (See footnote 1).

2. It is concluded that the plaintiffs have met all of the prerequisites of Rule 23(a) and (b)(2) and that this action proceed as a class action for the class defined as all consumers of health care services who have been or will be entitled to free or reduced cost medical care at Forsyth Memorial Hospital under the statutory and regulatory provisions of the Hill-Burton Act.

---

19. *See* N.C.G.S. § 122–58.1 (1974) et seq.

3. The motion to intervene filed by Brenda Kay Hicks Fernandez, seeking to have the lien filed against her recovery in a state court action declared invalid, is collateral to the central issues of this case, but the motion is granted as a matter of permissive intervention in order to save future litigation and expense. 42 C.F.R. § 53.111(f)(2)(i) and (ii), while not specifically permitting the recovery by the hospital of expenses from a Hill-Burton eligible patient who eventually recovers from a third-party tort-feasor, encompasses within its intent the right of a Hill-Burton hospital to file a lien under the provisions of N.C.G.S. § 44–49 to secure payment in the event that the patient obtains recovery in the tort action.

4. Reynolds Memorial Hospital is not required to give uncompensated care under the Hill-Burton Act and its accompanying Regulations.

5. The individual plaintiffs have not exhausted their administrative remedies provided in 42 U.S.C. § 300p–2(c) as to a declaration of individual entitlement *vel non* to Hill-Burton uncompensated medical care and, consequently, have not complied with the statutory prerequisite to maintain an action in federal court.

6. It is concluded that the plaintiffs' demand to have medical care provided on a first-come, first-serve basis to all qualified persons whose care is "medically necessary"—rather than the current practice of providing care to Hill-Burton eligible patients by giving first priority to emergency patients, second priority to urgent patients, and last priority to elective patients—presents a proper question to be resolved by application of the doctrine of primary jurisdiction. Such challenges to the amount, type, and priority of medical care provided to Hill-Burton patients must be addressed to the appropriate state agency in the first instance.

7. 42 C.F.R. § 53.111(f)(1) is declared invalid because it is contrary to the goals and purposes of the Hill-Burton Act, 42 U.S.C. § 291c(e). The interim Hill-Burton policy statement concerning the determination of eligibility and billing procedures published by the Department of Health, Education, and Welfare as specified in the Memorandum of September 5, 1974, and the notice provisions of 42 C.F.R. § 53.111(i) as set forth in the proposed Regulations appearing in *Federal Register*, Vol. 40, No. 46, at 10687 (March 7, 1975), as modified by the Court, provide reasonable guidelines by which eligibility, billing, and notification may be accomplished within the purpose and spirit of the Hill-Burton Act.

8. The transfer of some Hill-Burton eligible patients to Reynolds, absent a showing of a reasonable and rational basis of differentiation which is applied fairly, would arbitrarily deprive those patients transferred to Reynolds of benefits to which they were entitled at Forsyth in violation of the Equal Protection Clause of the Fifth and Fourteenth Amendments.

9. The affidavits of James C. Gulick (as modified by stipulation) and Jerry A. Ritchie are factual in content and contain relevant and material factual evidence.

10. The Forsyth County Board of Commissioners is not a necessary party to this action since relief is not available against Reynolds, and the Board's only connection with the parties in this suit is in the fact that it recently assumed operational management of that hospital.

11. The defendants have no authority to direct the Clerk of Superior Court of Forsyth County, General Court of Justice of the State of North Carolina, as to how he is to make the determination relative to the place where mentally ill persons are committed, and the Court will not direct the defendants to do so.

ORDER

It is, therefore, ORDERED that:

(1) This action be, and hereby is, declared a class action brought on behalf of the class as defined in Conclusion of Law No. 2.

(2) The motion of Brenda Kay Hicks Fernandez to intervene is granted.

(3) The defendants follow the interim policy statement of the Department of Health, Education, and Welfare specified in the memorandum of September 5, 1974, and the notice provisions as specified in the *Federal Register*, Vol. 40, No. 46, at 10687 (March 7, 1975), and in this opinion until such similar provisions are issued by the Secretary of Health, Education, and Welfare and the defendants will then adhere to the amended Regulations.

(4) The defendants formulate a written policy governing the transfer of Hill-Burton eligible patients from Forsyth to Reynolds and submit it to the Department of Human Resources of the State of North Carolina and to the United States Department of Health, Education, and Welfare for their comment and approval. The defendants will then submit the proposed guidelines, together with the comments and approval or disapproval of the agencies, to the Court within ninety (90) days of the date of this order for a determination as to the validity of the guidelines under applicable legal standards. Once approved by the Court, these guidelines will be supplied to every doctor responsible for the care of Hill-Burton patients at Forsyth with instructions that the same be made available by him to any Hill-Burton patient he proposes to transfer (or discharge for the purpose of a new admission) to a non-Hill-Burton facility prior to his taking such action.

(5) The motions to strike the affidavits of James C. Gulick and Jerry A. Ritchie are denied.

(6) The plaintiffs' motion to amend their complaint filed on July 15, 1975, is allowed.

## SUPPLEMENTAL MEMORANDUM ORDER AND JUDGMENT

This Memorandum Order and Judgment is necessitated by the earlier directive of this Court to the defendants to prepare workable guidelines governing the transfer of patients eligible for Hill-Burton benefits from a funded medical facility to a non-Hill-Burton hospital. (See Findings of Fact, Conclusions of Law, and Order, dated September 11, 1975, pp. 726–728). Further, the plaintiffs allege compliance with the Order of the Court that the appropriate federal and state agencies, in the first instance, have been presented with the challenge to Forsyth Hospital's policy of dispensing Hill-Burton funds among qualified patients, thus providing a proper jurisdictional predicate to judicial review of such policy. The plaintiffs have filed a motion in the cause attaching a letter from the North Carolina Department of Human Resources approving the plan of the defendants to provide Hill-Burton care on a priority basis to persons categorized as "emergency," "urgent," and "elective" (as opposed to providing such care on a first-come, first-serve basis).[1] The plaintiffs request the Court to determine that the present policy is contrary to the intent and purposes of the Hill-Burton Act and thus must be ruled invalid. Both parties have stipulated that all of the facts are now before the Court, and each has waived further hearing.

The admission policy of Forsyth Hospital based upon the classification system of "emergency," "urgent," and "elective" patients is the method selected by the Hospital Authority to dispense its required limited amount of care among potential recipients. The defendant's contention, stated in the previous Order

---

1. The transfer policy and a copy of the Court's Findings of Fact, Conclusions of Law, and Order were submitted to the Department of Health, Education, and Welfare and the North Carolina Department of Human Resources. The transfer policy includes references to the "emergency," "urgent," and "elective" categories, which were detailed and defined in the Court's Order of September 11, 1975. Forsyth Hospital's transfer policy was approved by the North Carolina Department of Human Resources on November 3, 1975, and by the Department of Health, Education, and Welfare on November 14, 1975; therefore, resort to primary jurisdiction and agency determination has been shown.

entered in this case at Page 27, "that eligible patients should be categorized into emergency, urgent, and elective status and treated according to medical severity throughout the fiscal year so that those in the greatest need are assured of receiving treatment before the funds are depleted" was indicated by the Court to appear ". . . a more logical and rational basis on which to equitably distribute the limited amount of care available among qualified recipients . . ." than on a first-come, first-serve basis. Therefore, it is now held that such method does not affront the purposes of the Hill-Burton Act or the Regulations promulgated thereunder.

█ As to the transfer provisions, the written policy submitted by the defendants is reasonably calculated to strike a balance between the exigencies of needed hospital care and bed space, and proper patient care as determined by sound medical judgment. Consequently, the policy is approved. However, in order to fully inform all potentially eligible Hill-Burton patients of all of the ramifications of the program, the defendants are directed to supply patients with a copy of the transfer policy at the time of determination of their eligibility and before admission subject to the same exceptions for emergency admission as provided in the previous Order at Page 724.

It is, therefore, ORDERED that the defendants supply all Hill-Burton eligible patients with a copy of the transfer policy at the time of determination of eligibility and admission in accordance with the notice provisions of the previous Order entered in this case on September 11, 1975. It is further ORDERED that the classification system employed by the defendants in providing limited benefits among qualified recipients comports with the requirements and intent of the Hill-Burton Act and Regulations as does the transfer policy. All issues in this case having now been resolved, this action is DISMISSED.